*In re* MIKESKA ESTATE

PAINTER v MIKESKA

Docket No. 75529. Submitted October 10, 1984, at Lansing.—Decided January 3, 1985.

John C. Mikeska, Sr., died and was survived by two sons and a daughter. The sons, Tom Mikeska and John C. Mikeska, Jr., petitioned for admission of a will dated August 27, 1981, and the will was admitted to probate. The daughter, Rose Painter, contested the will and offered another will dated July 7, 1982, unsigned by witnesses and in her possession. The Clinton County Probate Court, Marvin E. Robertson, J., held that the 1982 will was invalid because there were no witnesses' signatures on it and refused to allow testimony by the persons who allegedly were present at the signing of that will. The court appointed Harold Reed temporary personal representative of the estate, and granted summary judgment in favor of the brothers on the issue of whether the 1981 will was revoked by the 1982 will. The court then dismissed Painter's claims of undue influence regarding the 1981 will, finding that she had not met her burden of proof. Painter appealed, alleging several errors. *Held:*

1. The trial court did not use an erroneous standard of law in its determination of whether there was undue influence on the testator as to the 1981 will. The court found that there was no relationship of trust between testator and his sons and thus no presumption of undue influence arose to shift the burden of

REFERENCES FOR POINTS IN HEADNOTES

[1] 79 Am Jur 2d, Wills §§ 390-392, 396, 399, 403, 409.

[2] 29 Am Jur 2d, Evidence § 124.
   79 Am Jur 2d, Wills § 425 *et seq.*

[3] 79 Am Jur 2d, Wills § 428.

[4] 5 Am Jur 2d, Appeal and Error § 839.

[5] 76 Am Jur 2d, Trial § 1245.
   Power of court sitting as trier of fact to dismiss at close of plaintiff's evidence, notwithstanding plaintiff has made out prima facie case. 55 ALR3d 272.

[6] 79 Am Jur 2d, Wills §§ 314, 315.

going forward with the evidence to the sons. That finding is supported by the facts on the record.

2. Appellant asserted on appeal that the trial court erred by refusing to allow the witnesses of the 1982 will to sign it. While the statute requiring the signatures of witnesses does not prescribe a time limit within which the witnesses must sign, it is reasonable to require that they sign prior to the death of the testator. The trial court did not err in refusing to allow the signing after the testator's death.

Affirmed.

1. WILLS — UNDUE INFLUENCE.

Undue influence on a testator may be established by a showing that the testator was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will.

2. WILLS — UNDUE INFLUENCE — BURDEN OF PROOF — BURDEN OF PERSUASION.

A presumption of undue influence attaches to a transaction where the evidence establishes (1) the existence of a confidential or fiduciary relationship between a grantor and a fiduciary, (2) that the fiduciary benefits from the transaction, and (3) that the fiduciary had an opportunity to influence the grantor's decision in that transaction; the establishment of the presumption shifts the burden of going forward with contrary evidence onto the person contesting the claim of undue influence, but the burden of persuasion remains with the party asserting the undue influence.

3. WILLS — UNDUE INFLUENCE — RELATIONSHIP OF TRUST.

The existence of a relationship of trust is not an element of undue influence, but its existence is relevant in determining whether a presumption of undue influence arises in the making of a will.

4. APPEAL — PROBATE COURT — FINDINGS OF FACT.

Findings of fact of a probate judge will not be reversed unless the evidence clearly preponderates in the opposite direction.

5. TRIAL — MOTION TO DISMISS — COURT RULES.

A trial court in a nonjury case, when ruling upon a motion to dismiss following the plaintiff's presentation of evidence, may judge credibility, weigh the evidence and decide the case on the merits; the court is not required to view the evidence in a light most favorable to the plaintiff (GCR 1963, 504.2).

6. WILLS — WITNESSES TO WILL — TESTATOR'S DEATH.

  The statute governing the witnessing of a will allows a witness to sign at some time after the date of the testator's execution of the will, but a witness may not validly sign the will after the death of the testator (MCL 700.122[1]; MSA 27.5122[1]).

*Thomas A. Doyle,* for appellant.

*Smith Bros. Law Office, P.C.* (by *Robert B. Worthy),* for appellees.

Before: DANHOF, C.J., and GRIBBS and R. M. SHUSTER,* JJ.

PER CURIAM. Rose Painter (appellant) appeals as of right from the trial court's order of summary judgment granted pursuant to GCR 1963, 117.2(1) in favor of Tom and John Mikeska, Jr. (appellees) for failure to state a claim upon which relief can be granted, and an order of dismissal granted pursuant to GCR 1963, 504.2 for failure to meet the burden of proof regarding undue influence. The instant dispute involves the will of decedent, John C. Mikeska, Sr., who passed away on November 17, 1982, at the age of 91. He was survived by his daughter, appellant (the contestant of the will), and two sons, appellees (the proponents of the will).

At the time of decedent's death, there were two purported wills in existence. The will dated August 27, 1981, was found in decedent's lock box which he kept at his home and was admitted to probate upon petition of appellees. Also in existence was a will in an envelope dated July 7, 1982, unsigned by witnesses and in the possession of appellant, to whom it was allegedly given for safekeeping.

On January 4, 1983, a hearing was held before

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the probate court on appellant's petition for court supervision which requested admission of the July 7, 1982, will. At that hearing, the probate judge held that the July 7, 1982, will was invalid on its face inasmuch as there were no witnesses' signatures on it. The court refused to permit any testimony by the witnesses who were allegedly present at the signing of such will, although those persons were available in the courtroom for testimony. The proceedings were changed to supervised proceedings and a nonparty was appointed temporary personal representative.

The court granted summary judgment pursuant to GCR 1963, 117.2(1) on August 4, 1983, on the issue of whether the August 27, 1981, will was revoked by the July 7, 1982, will. This order was premised on the court's earlier determination that the July 7, 1982, will was invalid on its face.

Hearings were then held on appellant's claim that appellees had unduly influenced decedent and fraudulently procured the August 27, 1981, will. The court dismissed these claims, finding that appellant had not met her burden of proof in establishing that decedent reposed trust or confidence in appellees or that they had used compulsion, force or coercion upon decedent in order to make him execute a will which he did not intend to execute.

Appellant argues on appeal that the transcript of the trial court's ruling on the appellees' motion to dismiss clearly shows that the court granted the motion, as to the claim of undue influence, based on the erroneous assumption that appellant was required to establish that decedent reposed trust and confidence in appellees. Appellant asserts that such a showing is not required; the influence must only be such that it overpowers the decedent's free

will and prevents him from doing as he desires with his property.

In ruling from the bench on appellees' motion for dismissal, the trial court stated the following concerning the law of undue influence:

"[T]here has to be a showing that the decedent had such trust in the beneficiaries of the will to such an extent that these beneficiaries, that is the Mikeska brothers, the sons of the decedent could have exerted undue influence with that very stringent definition that I gave. The key word is, there has to be a showing that the decedent reposed trust and confidence in the beneficiaries, and in the terms of undue influence this court deems this to be critical. We have testimony even from contestants *[sic]* that as opposed to there being a relationship of trust and confidence, even contestant['s] own testimony and proofs indicated there was a degree of hostility between the decedents *[sic]* and the sons. There existed a degree of suspiciousness. That there was a[n] argumentative relationship, and even testimony from contestants *[sic]* tended to show that decedent was stubborn and set in his ways, and therefore not susceptible to improper, undue influence, and for this reason the court finds that the contestant has failed to meet the requisite burden of proof to show that the will should fail due to undue influence. And again, the related issue with the definition of undue influence, as well, I want to indicate that the court has heard no proofs or evidence from which the court can justifiably draw an inference that any parties used such compulsion or force or coercion upon the decedent in order to make him execute a will which he did not intend to do."

"To establish undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will." *Kar v Ho-*

*gan,* 399 Mich 529, 537; 251 NW2d 77 (1976). However, there is a presumption of undue influence which attaches to a transaction where the evidence establishes (1) *the existence of a confidential or fiduciary relationship* between the grantor and a fiduciary, (2) that the fiduciary (or an interest which he represents) benefits from the transaction, and (3) that the fiduciary had an opportunity to influence the grantor's decision in that transaction. *Id.* The establishment of this presumption creates a "mandatory inference" of undue influence, shifting the burden of going forward with contrary evidence onto the person contesting the claim of undue influence. However, the burden of persuasion remains with the party asserting such. If the defending party fails to present evidence to rebut the presumption, the proponent has satisfied the burden of persuasion. *Id.,* pp 541-542.

In the instant case, the trial court made two findings of fact. The court found, first, that there was no relationship of trust and confidence because of the hostility and suspicion between decedent and his sons. The second finding was that there was no force, coercion or compulsion employed by appellees. While the existence of a relationship of trust is not an *element* of undue influence, its existence, among other things, is relevant in determining whether a presumption of undue influence arises. *Kar, supra.* Thus, the lower court's analysis of the issue was not incorrect. If a presumption arises, then the burden shifts. If no such presumption has been established, then it must be determined, aside from the presumption, whether the party asserting undue influence has established such. In either case, the existence of a relationship of trust is a necessary inquiry. See *In re Conant Estate,* 130 Mich App 493, 498; 343 NW2d 593 (1983).

In the case *sub judice,* the court's final order makes no mention of any requirement concerning a relationship of trust. Rather, it finds only that decedent was not susceptible to undue influence because of his stubborn nature, suspicion of his own children, and argumentative nature generally with respect to his sons. Thus, we do not believe that the lower court applied an erroneous standard of law.

In turning to the issue of undue influence as resolved below on the facts presented, we note that findings of fact of a probate judge will not be reversed unless the evidence clearly preponderates in the opposite direction. *In re Cole Estate,* 120 Mich App 539, 545; 328 NW2d 76 (1982). Moreover, a trial court in a nonjury case, when requested to rule upon a motion to dismiss following the plaintiff's presentation of evidence, may judge credibility, weigh the evidence and decide the case on the merits; the trial court is not required to view the evidence in a light most favorable to the plaintiff. GCR 1963, 504.2; *Warren v June's Mobile Home Village & Sales, Inc,* 66 Mich App 386; 239 NW2d 380 (1976).

There was little evidence of undue influence in the instant case. Appellant testified that her father thought that her brothers were up to "no good" concerning the will and that they made him nervous and upset. She further stated that her brothers were always at her father's house and that appellee Tom Mikeska locked his father in the house when he was not there. Tom Mikeska testified, however, that he locked his father in the house at the latter's request because he would doze off during the day. Both appellees testified that their father was set in his ways and that there had been many arguments between them.

The drafter of the will, attorney Terry Smith,

testified that, while Tom accompanied his father to his office on the day that the will was drafted, he did not believe Tom was in the office, but rather was in the waiting room when that will was drafted. Smith testified that decedent wished to leave his daughter only $100 because he was mad at her. Smith testified that each time a will was executed, he asked the testator if he had read the instrument, understood the contents, if he wanted the witnesses who were to sign, and whether he was signing as his last will and testament.

On the entire record, it cannot be said that the evidence clearly preponderates in the opposite direction. Because the trial court made the necessary findings of fact for a determination of undue influence, any error in the trial court's understanding of the law when ruling from the bench was rendered harmless. We, however, do not believe that the lower court erred in applying the law. Rather, it simply inquired first into whether a presumption of undue influence was warranted by the facts.

Appellant next asserts that the lower court erred in refusing to probate the unwitnessed, July 7, 1982, will of decedent because MCL 700.122; MSA 27.5122 does not prescribe any time limit within which the witnesses are to afix their signatures to the will, and, therefore, the lower court's denial of her request to allow the witnesses of the July 7, 1982, will to sign it was improper.

The portion of MCL 700.122(1); MSA 27.5122(1) relevant to this appeal provides as follows:

"A will shall be in writing signed by the testator or in the testator's name by some other person in the testator's presence and by his direction and shall be signed by at least 2 persons each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will."

This is derived from UPC 2-502. The comment to that section states that the intent is to validate wills which meet the minimum formalities of this state. It is obvious that the statute allows a witness to sign after the date of execution by the testator. See *In re Estate of Kavcic,* 341 So 2d 278 (Fla App, 1977). However, we have been able to find only one other court which has been presented with the issue of whether signing by witnesses *after the testator's death* is permissible under a statute derived from UPC 2-502.

In the case of *In re Estate of Flicker,* 215 Neb 495; 339 NW2d 914 (1983), the Nebraska Supreme Court construed Neb Rev Stat § 30-2327 (Reissue 1979), which is substantially similar to MCL 700.122(1); MSA 27.5122(1), and held that signing by witnesses must take place prior to the death of the testator. That court noted that the statute does not specifically require signing by witnesses prior to death and that a cogent argument could be made that, since the requirement of attestation is purely statutory, a requirement of signing by witnesses prior to the testator's death should not be read into the statute. This is especially true where, as in Michigan, the probate code was revised to reduce will formalities to a minimum. Nevertheless, the court held that a line drawn at the date of the testator's death would most likely minimize miscarriages of justice. The court reasoned that permitting witnesses to sign a will after the death of a testator would "erode the efficacy of the witnessing requirement as a safeguard against fraud or mistake". The court further noted that "[w]e must bear in mind that we are dealing with an instrument allegedly signed or acknowledged by a man who is now dead. He is not present to confirm or reject it." 214 Neb 497; 339 NW2d 915.

We agree with the holding in *Flicker,* as well as with the rationale.

Accordingly, we agree with appellees that, although it may be permissible for a witness to sign the will at some point after execution by the testator, it is quite another matter to allow such after his death.

Affirmed.