392 F.3d 1118
 In re: Vickie Lynn MARSHALL, Debtor.
E. Pierce Marshall, Plaintiff-Counter-Defendant/Appellant-Cross-Appellee,
v.
Vickie Lynn Marshall, Defendant-Counter-Claimant/Appellee-Cross-Appellant.
 No. 02-56002.
 No. 02-56067.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 9, 2003.
 Filed December 30, 2004.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED G. Eric Brunstad, Jr., Bingham McCutchen, Hartford, CT, for the plaintiff-counter-defendant/appellant-cross-appellee.
 Sheila S. Kato and Kent L. Richland, Greines, Martin, Stein & Richland, Los Angeles, CA, for the defendant-counter-claimant/appellee-cross-appellant.
 Appeal from the United States District Court for the Central District of California; David O. Carter, District Judge, Presiding. D.C. No. CV-01-00097-DOC.
 Before: BEEZER, KLEINFELD, and PAEZ, Circuit Judges.
 BEEZER, Circuit Judge.
 
 
 1
 This appeal involves disputed claims made by Vickie Lynn Marshall, the surviving spouse of J. Howard Marshall II, against E. Pierce Marshall, the decedent's surviving son, the trustee of decedent's trust property and the executor of the estate of J. Howard Marshall II, deceased.
 
 
 2
 The surviving spouse alleges that E. Pierce Marshall tortiously interfered with an expected inter vivos gift from the decedent. Three courts — the Texas probate court, the U.S. bankruptcy court and the U.S. district court — have rendered conflicting judgments that decide the claims of the surviving spouse and that affect the distribution of the net property of the decedent's trust and probate estate.
 
 
 3
 While active probate proceedings were pending in the courts of the State of Texas, the surviving spouse filed personal bankruptcy proceedings in California. The resulting bankruptcy court proceedings and subsequent appeals to the district court resulted in the district court awarding a money judgment to Vickie Lynn Marshall for intentional interference with an inter vivos gift that she expected from the decedent. E. Pierce Marshall filed a timely appeal from the district court's money judgment. In a cross-appeal the surviving spouse seeks to reverse the district court's determination that the bankruptcy proceeding was not a core proceeding. She also attacks the amount of the damage award entered by the district court, which reduced the sum she was awarded by the bankruptcy court.
 
 
 4
 Our jurisdiction on the merits depends upon whether the probate exception to federal court jurisdiction applies to the claims initiated in the Texas probate court between the contesting claimants to the decedent's property. Incidentally we are required to determine whether the probate exception applies in a bankruptcy case.
 
 
 5
 We have appellate jurisdiction. 28 U.S.C. § 1291. We hold that all federal courts, including bankruptcy courts, are bound by the probate exception to federal court jurisdiction and that we are required to refrain from deciding state law probate matters, no matter how the issue is framed by the parties. We vacate the district court's final judgment and remand with instructions.
 
 
 6
 * During his lifetime and commencing in 1982, J. Howard Marshall II conveyed and transferred most of his property under the terms and provisions of a written revocable inter vivos trust. When J. Howard Marshall II created the trust, he resided in Texas. E. Pierce Marshall and J. Howard Marshall II were initially named as co-trustees of the 1982 trust. The trust instrument expressly provided for the disposition of J. Howard Marshall II's trust property upon his death. During his lifetime, J. Howard Marshall II retained the right to receive income from the trust estate, and the trust assumed the obligation to pay the debts of J. Howard Marshall II.
 
 
 7
 In addition to property and income held in trust, J. Howard Marshall II received income and held property solely in his own name. The second wife of J. Howard Marshall II died in 1991. E. Pierce Marshall then became the primary beneficiary of the trust upon the death of J. Howard Marshall II. To a lesser extent various charities and family beneficiaries received minor trust distributions upon the death of J. Howard Marshall II.
 
 
 8
 J. Howard Marshall II met Vickie Lynn Smith in 1991. They were married on June 27, 1994. J. Howard Marshall II gave Vickie Lynn Marshall numerous inter vivos gifts of cash and personal property during his lifetime. J. Howard Marshall II did not execute any written trust, trust modification, last will and testament or conveyance in which Vickie Lynn Marshall is identified as a legatee, devisee or beneficiary, with one exception. In 1994, J. Howard Marshall II conveyed certain particularly described real property as a gift to Vickie Lynn Marshall in a separate conveyance. There is no evidence that J. Howard Marshall II authorized Vickie Lynn Marshall to participate in any capacity whatsoever with respect to Marshall business interests. There is also no evidence in the record that Vickie Lynn Marshall was a registered owner of any securities issued by Marshall corporations engaged in the petroleum industry.
 
 
 9
 J. Howard Marshall II frequently consulted his attorneys about gift taxes, estate taxes, and trust and estate matters. He considered and rejected several suggestions made by his attorneys regarding estate plans and the transfer of property to Vickie Lynn Marshall. One of J. Howard Marshall II's tax and estate attorneys drafted a letter to another of J. Howard Marshall II's attorneys with several ideas regarding provisions for Vickie Lynn Marshall. Specifically, the correspondence recommended the creation of a "catch-all" trust for the benefit of Vickie Lynn Marshall. This letter was the source of her claim that J. Howard Marshall II intended to give her an inter vivos or post mortem gift. Although it is disputed whether this proposed catch-all trust was ever created, it is admitted that J. Howard Marshall II never delivered any property in trust for the use and benefit of Vickie Lynn Marshall. No such signed trust instrument was ever produced for admission in evidence.
 
 
 10
 J. Howard Marshall II executed his last will and testament on December 22, 1992. This will contained pour-over provisions, which required the distribution of the decedent's probate property to the trustee of the 1982 trust.
 
 
 11
 The terms of the 1982 trust were modified for the last time on July 13, 1994. Although J. Howard Marshall II was married to Vickie Lynn Marshall, no provision for distributions of income or principal of the trust estate was made in favor of the settlor's spouse. The trust remained responsible for J. Howard Marshall II's debts and permitted him to borrow money using the trust's property as security.
 
 
 12
 It is contended by E. Pierce Marshall that J. Howard Marshall II made the trust provisions irrevocable as of July 13, 1994, subject to the limited power to make specified changes, such as adding a charity as a beneficiary or substituting one beneficiary for another, as long as the beneficiary that was being substituted was already a current beneficiary. After the amendment, J. Howard Marshall II could have eliminated his son, E. Pierce Marshall, as a beneficiary of the trust by substituting a charity in his place. J. Howard Marshall II could not, however, have added Vickie Lynn Marshall as a beneficiary because she was not a named beneficiary of the trust as of July 13, 1994.
 
 
 13
 The parties vigorously contested whether J. Howard Marshall II voluntarily altered his trust so it would be irrevocable, or whether E. Pierce Marshall altered the trust without his father's knowledge. Vickie Lynn Marshall placed in issue the question whether J. Howard Marshall II possessed the mental capacity requisite to make any change to the terms of the trust. Our review of the trial records in the Texas probate court and in the United States district court discloses conflicting findings of fact critical to the merits of the cases of the contesting parties. The Texas probate court found that J. Howard Marshall II's 1982 trust, as amended, and his last will and testament were valid and had not been forged or altered; J. Howard Marshall II had the requisite mental capacity when he executed the 1982 trust, as amended, and his last will and testament; J. Howard Marshall II had not been the victim of fraud or undue influence; J. Howard Marshall II did not have an agreement with Vickie Lynn Marshall that he would give her one-half of all of his property; and J. Howard Marshall II did not intend to give and did not give Vickie Lynn Marshall a gift from his 1982 trust, as amended, or a bequest in his last will and testament. The United States district court made findings that E. Pierce Marshall, in concert with an attorney, "backdated documents, altered documents, destroyed documents, suborned falsified notary statements, presented documents to J. Howard [Marshall II] under false pretenses, and committed perjury," all in an effort to prevent J. Howard Marshall II from giving a gift to Vickie Lynn Marshall. The United States district court also determined that E. Pierce Marshall had tortiously interfered with Vickie Lynn Marshall's expectancy of an inter vivos gift from the decedent. The district court concluded that such conduct was actionable under Texas law.
 
 
 14
 On September 29, 1994, J. Howard Marshall II delivered gifts to Vickie Lynn Marshall valued at approximately $6 million "in consideration of her marriage to me." These gifts were memorialized in a document called the "Act of Donation." They included Compagnie Victoire,[1] jewelry, title to a ranch property located in Texas, and a Mercedes Benz automobile. Vickie Lynn Marshall accepted these gifts on October 27, 1994. These gifts are all undisputed and Vickie Lynn Marshall does not contend that J. Howard Marshall II lacked the mental capacity to make these itemized gifts.[2]
 
 
 15
 J. Howard Marshall II died of heart failure on August 4, 1995, at the age of ninety.
 
 II
 
 16
 The claims of Vickie Lynn Marshall that we consider in this appeal involve gifts, trusts, and probate matters. It is undisputed that Texas law governs the 1982 trust, as amended, and the last will and testament of J. Howard Marshall II. During the course of this opinion we accept as Texas law several principles.
 
 
 17
 In Texas, to establish a right to an inter vivos gift, a plaintiff must prove "(1) [donor's] intent to make a gift; (2) [donor's] delivery of the property; and (3)[donee's] acceptance of the property." Dorman v. Arnold, 932 S.W.2d 225, 227 (Tex.App.1996). Mere intent of donor or donee is not enough. See Oadra v. Stegall, 871 S.W.2d 882, 890 (Tex.App.1994). Additionally, under Texas law, inter vivos gifts are not valid if they are meant to take effect only upon the donor's death, unless there is a valid deathbed transfer. Dorman, 932 S.W.2d at 227-29. The Texas probate courts are wary of allegations of an inter vivos gift where the claim is made after the purported donor's death. "He who attempts to establish title to property through a gift inter vivos, as against the estate of a decedent, takes upon himself a heavy burden, which he must support by evidence of clear and probative force, which clearly establishes every element of a valid gift." Id. at 228.
 
 Under Texas law a trust may be created by:
 
 18
 (1) a property owner's declaration that the owner holds the property as trustee for another person;
 
 
 19
 (2) a property owner's inter vivos transfer of the property to another person as trustee for the transferor or a third person;
 
 
 20
 (3) a property owner's testamentary transfer to another person as trustee for a third person;
 
 
 21
 (4) an appointment under a power of appointment to another person as trustee for the donee of the power or for a third person; or
 
 
 22
 (5) a promise to another person whose rights under the promise are to be held in trust for a third person.
 
 
 23
 Tex. Prop. Code § 112.001. "There exist no particular forms or words required to create a trust, if there exists reasonable certainty as to a putative trust's property, object and beneficiaries." Tomlinson v. Tomlinson, 960 S.W.2d 337, 338 (Tex.App.1997). Texas courts look to the settlor's intent to determine whether a trust was created.[3] Barrientos v. Nava, 94 S.W.3d 270, 280 (Tex.App.2002) (citing Tex. Prop. Code § 112.002).
 
 
 24
 Texas courts have consistently refused to allow a litigant to sue in tort for interference with the expectancy of an inheritance where the decedent's will is upheld in probate court. See Thompson v. Deloitte & Touche, 902 S.W.2d 13, 16 (Tex.App.1995); Neill v. Yett, 746 S.W.2d 32, 35 (Tex.App.1988). Under Texas law, "the facts involved and the relief requested are determinative as opposed to the label by which the claim is called. Simply put, the substance of what is pled controls, not the label or name appended to the claim." Tri-State Chems., Inc. v. Western Organics, Inc., 83 S.W.3d 189, 194 (Tex.App.2002).
 
 III
 
 25
 The route followed by the parties to this appeal on their epic journey is a torturous one indeed. To facilitate an understanding of the voluminous record before us and to recognize the conflicting judgments which have been entered to date, we detail the history of the prior proceedings in state and federal courts.
 
 
 26
 * In April 1995, before the death of J. Howard Marshall II, an action was commenced in the probate court of Texas. Vickie Lynn Marshall sued E. Pierce Marshall in his individual capacity and in his capacities as the co-trustee of J. Howard Marshall II's Living Trust, as the agent for J. Howard Marshall II under a Power of Attorney dated July 13, 1994, and as the Temporary Guardian of the Person of J. Howard Marshall II. Vickie Lynn Marshall alleged that E. Pierce Marshall was tortiously interfering with her statutory right to support from her husband and that E. Pierce Marshall had breached his fiduciary duties as a Trustee. She also sought a declaration concerning the ownership of the assets in the Living Trust and challenged the validity of the Living Trust, claiming E. Pierce Marshall procured its execution by fraud and undue influence upon J. Howard Marshall II.[4]
 
 
 27
 Vickie Lynn Marshall alleged that E. Pierce Marshall in his individual capacity tortiously interfered with her statutory right to support from her husband and that E. Pierce Marshall had breached his fiduciary duties as a trustee of the 1982 trust agreement, as amended. Vickie Lynn Marshall sought a declaratory judgment establishing her interest in the property in the 1982 trust. She challenged the validity of the 1982 trust, as amended, alleging that E. Pierce Marshall procured its execution by fraud and undue influence upon J. Howard Marshall II. Three days after J. Howard Marshall II's death, Vickie Lynn Marshall filed a petition in the Texas probate court to establish that J. Howard Marshall II died intestate.
 
 
 28
 E. Pierce Marshall opposed the surviving spouse's petition and offered J. Howard Marshall II's last will and testament for probate on August 16, 1995. E. Pierce Marshall filed a counterclaim in which he sought a declaration that both his father's last will and testament and his father's 1982 trust, as amended, were legally valid instruments.
 
 
 29
 Vickie Lynn Marshall then contested the validity of her husband's last will and testament and sought a declaration that his 1982 trust, as amended, was null and void. Several other parties joined the proceedings seeking a share of the estate. These parties include J. Howard Marshall III, the other son of the decedent. None of these intervening parties have joined in these appellate proceedings.
 
 
 30
 By a third amended petition,[5] Vickie Lynn Marshall alleged that E. Pierce Marshall, his attorneys, and others tortiously interfered with her expectation based upon her belief that J. Howard Marshall II had promised to give her gifts both inter vivos and post mortem. Those promises are asserted to be oral and are not supported by any written evidence of the specific terms upon which any specific gift is promised. Vickie Lynn Marshall again challenged the validity of the 1982 trust, as amended, and the last will and testament of the decedent.
 
 
 31
 In each of her petitions before the Texas probate court, Vickie Lynn Marshall asserted that the probate court was vested with general probate jurisdiction to hear and decide all of her asserted claims.
 
 B
 
 32
 We now shift to another forum because Vickie Lynn Marshall, claiming to be a resident of the State of California, sought protections available under the bankruptcy laws of the United States.
 
 
 33
 During the pendency of the probate proceedings in the Texas probate court, Vickie Lynn Marshall filed a voluntary Chapter 11 bankruptcy petition on January 25, 1996, in the United States District Court for the Central District of California. Vickie Lynn Marshall was a debtor in possession and as such she was responsible for the payments to her creditors.
 
 
 34
 E. Pierce Marshall, in his individual capacity, filed a claim against Vickie Lynn Marshall's bankruptcy estate. He sought a declaration barring the discharge of any potential causes of action against Vickie Lynn Marshall for defamation and attorneys' fees which could be awarded by any court in the future.
 
 
 35
 Vickie Lynn Marshall, as debtor in possession of the Chapter 11 bankruptcy estate, filed counterclaims in the bankruptcy case against E. Pierce Marshall in his individual capacity for tortiously interfering with her expectancy of a gift or bequest from J. Howard Marshall II. Specifically, the allegations included the following:
 
 
 36
 (1) tortiously interfering with her expectancy of a gift or bequest from J. Howard Marshall II;
 
 
 37
 (2) interfering with her rights as J. Howard Marshall II's surviving spouse;
 
 
 38
 (3) fraudulently effecting an inter vivos transfer of J. Howard Marshall II's property in trust;
 
 
 39
 (4) abuse of legal process;
 
 
 40
 (5) imprisonment of J. Howard Marshall II against his will;
 
 
 41
 (6) breach of contract;
 
 
 42
 (7) breach of fiduciary duty;
 
 
 43
 (8) exerting fraud, duress and undue influence over J. Howard Marshall II in the making of his last will and testament; and
 
 
 44
 (9) undue influence causing modification of the 1982 trust.
 
 
 45
 Only Vickie Lynn Marshall's claim for tortious interference with her expectancy of a gift actually went to trial.
 
 
 46
 E. Pierce Marshall moved to dismiss Vickie Lynn Marshall's claims for lack of subject matter jurisdiction, arguing that the Texas probate court had exclusive jurisdiction. The probate exception to federal court jurisdiction was expressly invoked in the bankruptcy court proceedings. The bankruptcy court denied E. Pierce Marshall's motion to dismiss for lack of jurisdiction.
 
 
 47
 E. Pierce Marshall then moved the district court to withdraw the litigation from the bankruptcy court. Upon removal to district court, the Honorable William Keller initially presided. Judge Keller granted the motion, but left the bankruptcy court to resolve pending discovery disputes. In so doing, Judge Keller stated that he thought the substantive matters at issue involved the application of Texas trust and estate law and properly belonged in the Texas probate court.
 
 
 48
 On February 2, 1999, Bankruptcy Judge Samuel L. Bufford entered a sanctions order against E. Pierce Marshall for discovery abuse. The sanction imposed by the court deemed almost all facts alleged in pleadings filed by the attorneys for Vickie Lynn Marshall to be admitted facts in support of each of the pleaded legal theories upon which judgment was sought against E. Pierce Marshall.
 
 
 49
 On March 8, 1999, the bankruptcy court confirmed Vickie Lynn Marshall's Chapter 11 plan of reorganization and discharged her scheduled debts. All of the property subject to bankruptcy then reverted to Vickie Lynn Marshall in her personal capacity. This permitted Vickie Lynn Marshall to vigorously pursue all of her legal and equitable actions against E. Pierce Marshall in both the California bankruptcy court and the Texas probate court.
 
 
 50
 The district court vacated the bankruptcy court's sanctions order at a hearing on March 9, 1999, finding that the order was not supported by the evidence. Judge Keller emphasized again his view that the matter belonged in probate court. The district court vacated its prior withdrawal of the matter and returned the case to bankruptcy court.
 
 
 51
 On May 20, 1999, the bankruptcy court reentered its sanctions order with the addition of footnotes to explain its decision. In the order, the bankruptcy court once again deemed Vickie Lynn Marshall's allegations against E. Pierce Marshall to be established. As a result of this sanctions order, E. Pierce Marshall was not allowed to present conflicting evidence at the evidentiary hearing to determine whether Vickie Lynn Marshall was entitled to damages.
 
 
 52
 The bankruptcy court held a five day hearing commencing on October 27, 1999. The court found that E. Pierce Marshall tortiously interfered with Vickie Lynn Marshall's expectancy that she would receive an inter vivos gift from J. Howard Marshall II in the form of a catch-all trust that would take effect upon the death of J. Howard Marshall II. The bankruptcy court also concluded that the Texas Supreme Court would recognize the tort of intentional interference with the expectancy of a gift if the issue were presented to it, and that the probate exception did not apply as a jurisdictional bar to Vickie Lynn Marshall's tort claim. The bankruptcy court then entered summary judgment denying E. Pierce Marshall's defamation claims against Vickie Lynn Marshall.[6]
 
 
 53
 On January 18, 2000, the bankruptcy court sua sponte withdrew its sanctions order, but did not change any of its other rulings which had been based on the allegations by Vickie Lynn Marshall deemed true. The court did not hold another evidentiary hearing.
 
 
 54
 On September 27, 2000, the bankruptcy court made express findings that E. Pierce Marshall had tortiously interfered with Vickie Lynn Marshall's expectation that she would inherit from J. Howard Marshall II's estate. The court reasoned that a "widow's election" under Texas law supported a monetary judgment. The court awarded Vickie Lynn Marshall nearly four hundred and fifty million dollars, but stated that the final calculation of damages was contingent and could be modified upon the completion of the Texas probate action.
 
 
 55
 On October 6, 2000, the bankruptcy court entered a revised judgment against E. Pierce Marshall, individually, again for nearly four hundred and fifty million dollars, less whatever proceeds Vickie Lynn Marshall received from the estate of J. Howard Marshall II. In its revised judgment the bankruptcy court awarded damages based, not on Vickie Lynn Marshall's "widow's election," but rather as sanctions for discovery abuse by E. Pierce Marshall during the adversary proceeding.
 
 
 56
 Despite the earlier withdrawal of its sanctions order, the court stated that it made the following findings as sanctions for discovery abuse:
 
 
 57
 (1) E. Pierce Marshall interfered with gifts J. Howard Marshall II wished to make to Vickie Lynn Marshall by firing one attorney and conspiring with another to prevent the transfer of property from the trust;
 
 
 58
 (2) E. Pierce Marshall devised a secret plan to make J. Howard Marshall II's trust irrevocable; and
 
 
 59
 (3) E. Pierce Marshall added the clause to the 1982 trust making it irrevocable after J. Howard Marshall II died.
 
 
 60
 The bankruptcy court found that Vickie Lynn Marshall had an expectancy of a gift based upon J. Howard Marshall II's promises to her and his instructions to his attorneys to prepare a "catch-all" trust for her that would entitle her to one-half of the future appreciation of his interest in his Marshall Petroleum, Inc. stock.
 
 
 61
 On November 21, 2000, the bankruptcy court entered a further order for punitive damages against E. Pierce Marshall, individually, in the sum of twenty-five million dollars. These damages were imposed for discovery abuses. In this order, the bankruptcy court held that the claim of Vickie Lynn Marshall was a "core" bankruptcy proceeding.
 
 
 62
 On December 29, 2000, the bankruptcy court entered its final judgment against E. Pierce Marshall individually in the amount of $474,754,134.
 
 C
 
 63
 During the bankruptcy court proceedings, litigation continued in the Texas probate court. On January 5, 2001, shortly after the bankruptcy court entered its judgment, Vickie Lynn Marshall filed a nonsuit with respect to all her pending claims in the Texas probate proceeding. The Texas probate judge expressly explained that, by reason of the filing and granting of a nonsuit, all of Vickie Lynn Marshall's claims against the decedent's estate would be forfeited. In open court the probate judge warned her as follows:
 
 
 64
 Even if you take a nonsuit, which under the Rules of Civil Procedure give you a right to refile it, as a practical matter you don't, because the Estate is gone.... Your claim to anything that the Decedent had at any time in his life is over when this final judgment is signed. The fact that the Rules of Civil Procedure allow you to take a nonsuit and re-file later doesn't really apply in Probate Court when we're talking about who is entitled to an Estate.
 
 
 65
 Despite the probate court's warnings, Vickie Lynn Marshall freely elected to dismiss her claims against the estate of J. Howard Marshall II and against E. Pierce Marshall, individually and in his representative capacities. However, the non-suit did not dismiss Vickie Lynn Marshall as a defendant in the declaratory judgment action seeking to establish that the 1982 trust, as amended, and the decedent's last will and testament were valid.
 
 
 66
 On February 9, 2001, E. Pierce Marshall filed an amended counterclaim against Vickie Lynn Marshall and others having any interest in the estate for declaratory relief to determine their rights against the estate of J. Howard Marshall II.
 
 
 67
 The Texas probate court conducted a jury trial that lasted more than five months, in which all parties fully participated. Vickie Lynn Marshall and J. Howard Marshall III contested the validity of every estate planning transaction from 1979 forward which involved J. Howard Marshall II or any interest in his property. Specific testimony recounted the many transfers of property in trust by J. Howard Marshall II and from the trust to E. Pierce Marshall.
 
 
 68
 Vickie Lynn Marshall presented her entire case in chief, including six days of her own testimony and a lengthy cross-examination of E. Pierce Marshall.[7] Vickie Lynn Marshall testified extensively regarding her expectancy of a gift, including her allegation that J. Howard Marshall II promised her one-half of all his property.[8] Vickie Lynn Marshall claimed in the Texas probate proceeding that E. Pierce Marshall had destroyed relevant documents, including those relating to the catch-all trust for the benefit of Vickie Lynn Marshall.
 
 
 69
 The jury in the Texas probate court returned a unanimous verdict on March 7, 2001. Consistent with the jury's verdict, the Texas probate court entered a final judgment dated December 7, 2001, which included the following provisions:
 
 
 70
 (1) the 1982 trust, as amended, and last will and testament of J. Howard Marshall II were valid and had not been forged or altered;
 
 
 71
 (2) J. Howard Marshall II had not been the victim of fraud or undue influence;
 
 
 72
 (3) J. Howard Marshall II possessed the requisite mental capacity when he executed the 1982 trust, as amended, and his last will and testament;
 
 
 73
 (4) J. Howard Marshall II did not intend to give and did not give Vickie Lynn Marshall a gift or bequest from the Estate of J. Howard Marshall II or from the 1982 trust, as amended, either prior to or upon his death;
 
 
 74
 (5) Vickie Lynn Marshall was not entitled to any distribution from the Estate of J. Howard Marshall II by virtue of an agreement;
 
 
 75
 (6) Vickie Lynn Marshall was entitled to take nothing against any of the defendants;
 
 
 76
 (7) E. Pierce Marshall was entitled to his distribution as set forth in the 1982 trust, as amended, and as provided in the last will and testament of J. Howard Marshall II;
 
 
 77
 (8) E. Pierce Marshall was entitled to a judgment for $541,000 as attorney's fees payable by Vickie Lynn Marshall for her conduct after the time of her bankruptcy discharge through the end of the Texas trial;[9]
 
 
 78
 (9) the claims of Vickie Lynn Marshall against E. Pierce Marshall were compulsory counterclaims that were required to be brought in the probate suit;
 
 
 79
 (10) Vickie Lynn Marshall voluntarily abandoned her claims to any interest in the property, the 1982 trust, as amended, or the estate of J. Howard Marshall II; and
 
 
 80
 (11) all claims by Vickie Lynn Marshall against E. Pierce Marshall, both individually and in his various representative capacities, were dismissed.
 
 
 81
 The Texas probate court declared as a matter of law that it had exclusive and dominant jurisdiction over all claims arising out of the last will and testament, the 1982 trust, as amended, and all property interests of J. Howard Marshall II. In addition, the Texas probate court asserted exclusive jurisdiction over all affirmative claims brought and all compulsory counterclaims that could have been brought by either J. Howard Marshall III or Vickie Lynn Marshall, as well as all claims regarding any completed gift made by J. Howard Marshall II either during his life or any gift to take effect upon his death.
 
 D
 
 82
 E. Pierce Marshall appealed the bankruptcy judgment to the district court. The district court asserted original bankruptcy jurisdiction. 28 U.S.C. § 1334. After the Texas probate court entered its judgment, E. Pierce Marshall moved in the district court to dismiss Vickie Lynn Marshall's claim against him, asserting that her claim was barred by both claim preclusion and issue preclusion. The motion papers argued that the matters at issue in the federal courts had been decided in the Texas probate proceeding. E. Pierce Marshall also argued that the claims of Vickie Lynn Marshall were subject to dismissal under the probate exception to federal jurisdiction.
 
 
 83
 On June 19, 2001, the district court affirmed the bankruptcy court's determination that federal jurisdiction was proper over Vickie Lynn Marshall and her several claims. The district court determined that:
 
 
 84
 (1) the Texas probate court had not ruled on the claims of Vickie Lynn Marshall against E. Pierce Marshall in his individual capacity;
 
 
 85
 (2) the probate exception to federal jurisdiction did not apply because the probate exception applied only to the probate of wills;
 
 
 86
 (3) the claims of Vickie Lynn Marshall did not involve the last will and testament of J. Howard Marshall II, deceased; and
 
 
 87
 (4) Vickie Lynn Marshall could have filed her complaint in a court other than a probate court in Texas and thus her claim was not a compulsory counterclaim in the probate case.
 
 
 88
 The district court then vacated the bankruptcy court's final judgment because it concluded that Vickie Lynn Marshall's claim was not a "core" bankruptcy claim, and that the bankruptcy court's judgment merely constituted proposed findings of fact and conclusions of law.
 
 
 89
 On December 21, 2001, the district court denied E. Pierce Marshall's summary judgment motion based on claim and issue preclusion. The district court then set about its own de novo review.
 
 
 90
 On March 7, 2002, the district court entered a final judgment against E. Pierce Marshall. The final judgment, which is the principal subject of this appeal, was entered in the United States District Court for the Central District of California, David O. Carter, District Judge, presiding. The district court determined that although the Supreme Court of Texas had not yet done so, that court would recognize the tort of intentional interference with the expectancy of a gift under Texas law. The district court also determined that J. Howard Marshall II intended to give Vickie Lynn Marshall a gift in the form of a newly created trust. According to the district court, this trust was to take effect after the decedent's death. The specific trust corpus is not identified in the court's findings. We note the absence of any findings which tell us how to identify the prospective trustee and exactly how the distribution scheme for delivery of property is to work. The district court also concluded that E. Pierce Marshall tortiously interfered with J. Howard Marshall II's intentions by engaging in illegitimate "estate planning" transactions involving his father, and that E. Pierce Marshall altered the 1982 trust instrument, thereby invalidating it. The district court entered judgment in favor of Vickie Lynn Marshall which specifies an award of $88,585,534.66 for compensatory and punitive damages, plus costs of suit.
 
 
 91
 The appeal taken from the district court by E. Pierce Marshall and the cross appeal taken by Vickie Lynn Marshall have favored us with over 440 pages of appellate briefs prepared by their attorneys and they have required us to review one of the most extensive records ever produced in the Central District of California.
 
 IV
 
 92
 Jurisdiction is a question of law which we review de novo. United States v. Garrett, 253 F.3d 443, 446 (9th Cir.2001). We retain jurisdiction to determine whether we have jurisdiction. See United States v. United Mine Workers, 330 U.S. 258, 291, 67 S.Ct. 677, 91 L.Ed. 884 (1947).
 
 V
 
 93
 E. Pierce Marshall contends that the probate exception to federal jurisdiction applies and that as a result the federal courts lack jurisdiction over the subject matter of this appeal. It is considered well established
 
 
 94
 that since it does not pertain to the general jurisdiction of a court of equity to set aside a will or the probate thereof, or to administer upon the estates of decedents in rem, matters of this character are not within the ordinary equity jurisdiction of the federal courts; that as the authority to make wills is derived from the States, and the requirement of probate is but a regulation to make a will effective, matters of strict probate are not within the jurisdiction of courts of the United States.
 
 
 95
 Sutton v. English, 246 U.S. 199, 205, 38 S.Ct. 254, 62 L.Ed. 664 (1918). A federal court may "entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in custody of the state court." Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946) (internal quotation marks omitted).
 
 
 96
 Vickie Lynn Marshall argues that we need not consider the applicability of the probate exception because it operates only where the federal court has diversity jurisdiction and not in federal question cases. She relies on the Eleventh Circuit's decision in Goerg v. Parungao for the proposition that the probate exception applies only to statutory diversity jurisdiction. 844 F.2d 1562, 1565 (11th Cir.1988). In Goerg the court stated: "Care should be taken not to confuse the question of the breadth of Congress' bankruptcy power with the so-called `probate exception' to statutory diversity jurisdiction. That exception relates only to 28 U.S.C. § 1332 (1982)[diversity cases], and has no bearing on federal question jurisdiction, the jurisdiction invoked in bankruptcy cases." Id. This language from Goerg appears to support the proposition that the probate exception does not apply to federal question cases; however, we believe that this statement is dicta. The issue on appeal in Goerg was "whether section 304 of the Bankruptcy Code ... opens United States bankruptcy courts to proceedings ancillary to foreign insolvency proceedings where the entity that is the subject of the foreign proceeding qualifies for insolvency administration under foreign law, but does not fall within the Bankruptcy Code's definition of `debtor.'" Id. at 1563.
 
 
 97
 Although courts commonly refer to the probate exception as "the probate exception to diversity jurisdiction," see, e.g., Marshall v. Lauriault, 372 F.3d 175, 181 (3d Cir.2004), no other circuit has followed the Eleventh Circuit's lead in refusing to apply the exception to federal question cases.[10] In contrast, the Sixth Circuit has applied the probate exception to a case that was brought under 42 U.S.C. § 1983. See Tonti v. Petropoulous, 656 F.2d 212, 215-16 (6th Cir.1981).
 
 
 98
 More importantly, the Goerg rule conflicts with Supreme Court precedent. Contrary to Vickie Lynn Marshall's argument, the Supreme Court has evaluated the probate exception in federal jurisdiction cases, including bankruptcy, and in doing so the court has said nothing that limits the probate exception to diversity cases. See, e.g., Markham v. Allen, 326 U.S. at 493-95, 66 S.Ct. 296; Harris v. Zion Sav. Bank & Trust Co., 317 U.S. 447, 450-53, 63 S.Ct. 354, 87 L.Ed. 390 (1943) ("The probate court, not the bankruptcy court, is the appropriate forum for weighing the respective benefits or detriments to those who share in the equity of the decedent's estate."). The court's statement in Harris that "the federal courts have no probate jurisdiction and have sedulously refrained, even in diversity cases, from interfering with the operations of state tribunals invested with that jurisdiction" suggests that the probate exception also encompasses federal question cases. 317 U.S. at 450, 63 S.Ct. 354 (emphasis added).
 
 
 99
 Consistent with Harris, this court has said that, in applying the probate exception, "[t]he evil to be avoided is federal interference with state probate proceedings." Hilton v. Mumaw, 522 F.2d 588, 593 (9th Cir.1975). This rationale is as relevant to federal question cases as it is to diversity ones.
 
 
 100
 We specifically reject the Goerg pronouncement and hold that the probate exception is applicable in bankruptcy cases. We proceed to determine whether the exception applies under the facts of this case.
 
 
 101
 We have few precedents which address the probate exception so we shall consider and borrow from the established body of case law more thoroughly developed in our sister circuits. In particular, we adopt the framework for analysis laid out by the Second Circuit in Moser v. Pollin, 294 F.3d 335, 340 (2d Cir.2002), because it mirrors the explanation of the probate exception as set forth by the Supreme Court in Markham.[11]
 
 
 102
 In Moser the Second Circuit engaged in a two part inquiry to determine whether the controversy before it implicated probate matters such that the probate exception to federal jurisdiction applied. 294 F.3d at 340. The first part of the inquiry focuses on the question whether the matter is purely probate in nature, in that the federal court is being asked directly to probate a will or administer an estate. Id. As the Moser court noted "since few practitioners would be so misdirected as to seek, for example, letters testamentary or letters of administration from a federal judge," the answer to this question is almost always "No." Id. The second part of the inquiry focuses on whether the matter is probate related by determining whether, by exercising jurisdiction over the matter, the federal court would: (1) interfere with the probate proceedings; (2) assume general jurisdiction of the probate; or (3) assume control over property in custody of the state court.[12] Id. (citing Markham, 326 U.S. at 494, 66 S.Ct. 296). If the answer to any of these questions is yes, then the probate exception applies.
 
 
 103
 * The probate of a last will and testament, the validity of a testamentary trust, and the administration of a decedent's estate are matters of primary concern to the several states. The record before us indicates that the district court has neither decided whether the last will and testament of J. Howard Marshall II should be admitted to probate nor whether the dispositive provisions of decedent's 1982 trust, as amended, are valid. The district court did not supervise the administration of the estate of J. Howard Marshall II, with respect to creditor's claims or death tax issues. Because this case does not involve the administration of an estate, the probate of a will, or any other purely probate matter, we will continue on to the second part of the Moser analysis to determine whether Vickie Lynn Marshall's counterclaim is probate related such that a federal court, under the probate exception, lacks jurisdiction over the matter.
 
 B
 
 104
 The reach of the probate exception encompasses not only direct challenges to a will or trust, but also questions which would ordinarily be decided by a probate court in determining the validity of the decedent's estate planning instrument. Such questions include fraud, undue influence upon a testator, and tortious interference with the testator's intent. See Sutton, 246 U.S. at 207-08, 38 S.Ct. 254 (holding that in Texas a suit that is essentially a claim to property subject to administration in an estate is not within the jurisdiction of the federal courts); see also Turja v. Turja, 118 F.3d 1006, 1008-10 (4th Cir.1997) (holding that the probate exception applies to claims of undue influence and lack of testamentary capacity); Beren v. Ropfogel, 24 F.3d 1226, 1228-29 (10th Cir.1994) (declining to hear tort claims of interference with expected inter vivos gifts or testamentary dispositions because "the state probate proceeding afforded plaintiffs an `adequate and available' remedy in state court to contest [the] will" and "[t]he risk of inconsistent results is obvious"); Dragan v. Miller, 679 F.2d 712, 714-17 (7th Cir.1982) (refusing to hear a suit by a decedent's natural heirs against the beneficiaries of a will for intentional interference with the expectancy of an inheritance); Starr v. Rupp, 25 Ohio Misc. 224, 421 F.2d 999, 1003-07 (6th Cir.1970) (refusing to consider claims for breach of fiduciary duty that had already been rejected by the state court).
 
 
 105
 J. Howard Marshall II expressly declared that it was his intention to give, devise and bequeath all of his property to E. Pierce Marshall, family trusts, and to various charities through the provisions of his 1982 trust, as amended. Virtually all J. Howard Marshall II's property was to be conveyed post mortem to E. Pierce Marshall under the terms of the 1982 trust, as amended, for the express uses and purposes detailed as part of the terms of the written trust. The Texas probate court, as the supervisor of estate administration, was required to sort through all claims regarding distribution of the trust corpus. As the probate judge observed, the parties appearing in Texas were there to resolve:
 
 
 106
 the question of what [J. Howard Marshall II] had and what he did with it and whether that was proper or improper. All of that was before the Court. Howard Marshall III complained of every transaction that was done since 1979. Every transaction in connection with his estate plan was before this Court, and all of those transactions were found to be valid by the jury, and the Court is going to find them to be valid.
 
 
 107
 The district court's invalidation of the 1982 trust, as amended, was a necessary step supporting the conclusion that Vickie Lynn Marshall was entitled to a money judgment for damages. The district court specifically determined that the trust was forged and was procured by fraud in direct and irreconcilable conflict with the Texas probate court's judgment entered consistent with the findings of a jury. The district court's finding that J. Howard Marshall II intended to favor Vickie Lynn Marshall with a multi-million dollar gift, devise or bequest of property from his estate stands in direct conflict with the probate court's finding that J. Howard Marshall II did not intend to give, and did not give, Vickie Lynn Marshall any further gift either during his lifetime or post mortem.
 
 
 108
 The bankruptcy court's judgment was based specifically on Vickie Lynn Marshall's interest in J. Howard Marshall II's estate. In the bankruptcy court Vickie Lynn Marshall's damages were fixed in a dollar sum, less whatever future sum was to be received from the Texas probate proceedings in the Estate of J. Howard Marshall II. The district court's damage award is likewise based on the theory that property that was distributed from the trust estate of J. Howard Marshall II to E. Pierce Marshall should have been distributed to Vickie Lynn Marshall instead.
 
 
 109
 Although Vickie Lynn Marshall styles her action as a tort action, it is clear that the exercise of federal jurisdiction would and, in this case, did interfere with the Texas probate court proceedings. Vickie Lynn Marshall argues that her counterclaim is a personal one against E. Pierce Marshall as an individual and not against the estate. She cites Breaux v. Dilsaver for the proposition that the probate exception is inapplicable to an action against an administrator of an estate in his personal capacity because the judgment would be satisfied from the defendant's own property and not from the decedent's estate. 254 F.3d 533, 536-37 (5th Cir.2001). Breaux did not involve a challenge to the validity of the decedent's will or the distribution of estate property. Id. at 537. The personal representative's performance of his duties under the will was the only matter at issue. Id. at 535. Here this is not the case. In her brief, Vickie Lynn Marshall argues that she is entitled to nothing either from the 1982 trust, as amended, or the estate itself. Rather, she contends that she is entitled to the amount that J. Howard Marshall II intended to give her, in the form of a separate catch-all trust, but for the improper interference by E. Pierce Marshall. Regardless of the way in which Vickie Lynn Marshall seeks to characterize her lawsuit, "it is in substance nothing more than a thinly veiled will contest." Moser, 294 F.3d at 340-41. "[M]ere labels — whether an action is styled as a tort action or will contest — are not decisive in our probate-exception analysis." Storm v. Storm, 328 F.3d 941, 945 (7th Cir.2003). When the district court entered a judgment in favor of Vickie Lynn Marshall in the form of a damage award based upon what the court thought she should have received from J. Howard Marshall II's estate, the power of the Texas probate court was negated.
 
 
 110
 The Seventh Circuit, in a case very similar to this one, addressed some of these same issues. In Storm v. Storm, the grandson of the decedent filed an action seeking to obtain damages for tortious interference with an inheritance expectancy. 328 F.3d at 942. The court held that while the plaintiff
 
 
 111
 phrases his action as one involving tortious interference with his inheritance expectancy, the practical effect of his lawsuit would be similar to that of a successful will contest: the terms of the final, allegedly invalid testamentary instruments would essentially be bypassed, while [the plaintiff] would receive, as damages, the assets he would have otherwise been entitled to under what he says are [the decedent's] actual will and trust.
 
 
 112
 Id. at 945. Here the terms, held to be valid by the Texas probate court, of J. Howard Marshall II's 1982 trust, as amended, were bypassed by the district court when it granted damages "in the amount that J. Howard intended to give her." Although Vickie Lynn Marshall couches her claims in terms of tortious interference, if we were to uphold the decision of the district court we would essentially be allowing Vickie Lynn Marshall a second chance to litigate her claim against the estate of J. Howard Marshall II.
 
 
 113
 Vickie Lynn Marshall also contends that the probate exception is not applicable because her counterclaim concerns E. Pierce Marshall's interference with an inter vivos gift and that the gift was not a testamentary disposition. We find no support for this argument. The probate exception applies not only to contested wills, but also to trusts that direct a post mortem disposition of the trustor's property. See Golden ex rel. Golden v. Golden, 382 F.3d 348, 359 (3d Cir.2004) (agreeing with Storm, 328 F.3d at 947, that "causes of action involving trusts are treated under the probate exception in the same way as actions involving wills"). An inter vivos trust which disposes of property upon the death of the settlor is a recognized will substitute. See Georges v. Glick, 856 F.2d 971, 974 n. 2 (7th Cir.1988); see also Storm, 328 F.3d at 947.
 
 
 114
 Vickie Lynn Marshall cannot avoid the probate exception simply by stating that the trust which she claims was to be created for her benefit was an inter vivos trust. Here, the trust put into question by Vickie Lynn Marshall (the 1982 trust, as amended), not only controlled the distribution of J. Howard Marshall II's property during his lifetime, but also provided for the post mortem disposition of trust property. The trust executed by J. Howard Marshall II constituted the centerpiece of his estate plan. By declaring that the trust was invalid, the bankruptcy and district courts directly interfered with the Texas probate court's administration of the decedent's estate.
 
 C
 
 115
 Where a state has relegated jurisdiction over probate matters to a special court and if that state's trial courts of general jurisdiction do not have jurisdiction to hear probate matters, then the federal courts also lack jurisdiction over probate matters. McCan v. First Nat'l Bank of Portland, 139 F.Supp. 224, 227 (D.Or.1954), aff'd, 229 F.2d 859 (9th Cir.1956). A state court's holding regarding its jurisdiction over probate matters is binding on federal courts and is immune from collateral attack under the doctrine of res judicata. Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n, 455 U.S. 691, 706-07, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982); Durfee v. Duke, 375 U.S. 106, 111, 115-16, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963).
 
 
 116
 The probate exception to federal court jurisdiction is invoked because the state probate court must have exclusive in rem jurisdiction over all claims either against or on behalf of the decedent's estate. The probate jurisdiction extends to all probate matters whether based on a theory of tax liability, debt, gift, bequest, tort, or any other theory that interferes with the probate of wills or the state court's ability to engage in the administration of estates. Such jurisdiction is necessary for a probate court to perform its function properly in determining the lawful distribution of the decedent's estate. Because probate proceedings are actions in rem, they bind all persons unless set aside in the manner provided by law. Mooney v. Harlin, 622 S.W.2d 83, 85 (Tex.1981). "An in rem judgment ... is binding upon the whole world and specifically upon persons who have rights or interest in the subject matter, and this is so whether those persons were or were not personally served." Ladehoff v. Ladehoff, 436 S.W.2d 334, 336 (Tex.1968). The probate court ruled it had exclusive jurisdiction over all of Vickie Lynn Marshall's claims against E. Pierce Marshall. That ruling was binding on the United States district court. Durfee, 375 U.S. at 115-16, 84 S.Ct. 242; see also TEX. PROB. CODE §§ 5A(b), 5(f) ("[A]ny cause of action appertaining to estates or incident to an estate shall be brought in a statutory probate court" rather than in the district court, including "all matters relating to the collection, settlement, partition, and distribution of estates of deceased persons.").[13]
 
 
 117
 Upon the death of J. Howard Marshall II, and after the publication of notice to creditors, all claims against the decedent and his estate were required to be made in the probate proceedings. The Texas probate court had exclusive jurisdiction over Vickie Lynn Marshall's claim that J. Howard Marshall II intended to give his spouse a gift because her claim went to the very essence of the testamentary instruments executed by J. Howard Marshall II in his lifetime. The Texas probate court also had exclusive jurisdiction over Vickie Lynn Marshall's claim that E. Pierce Marshall improperly engaged in a series of transactions which wrongfully depleted the trust and estate of J. Howard Marshall II. Had Vickie Lynn Marshall succeeded, the result would have been a money judgment against E. Pierce Marshall and in favor of the estate of J. Howard Marshall II. Whether a party improperly removed an asset from a decedent's estate prior to the decedent's death is clearly a matter within the exclusive jurisdiction of the probate courts in Texas. English v. Cobb, 593 S.W.2d 674, 675-76 (Tex.1979).[14] Proof of these claims was required to be made and adjudicated in the Texas probate court having exclusive jurisdiction over such claims.
 
 
 118
 Vickie Lynn Marshall argues that because she voluntarily dismissed her claims in the Texas probate proceeding, her claims are no longer a part of that suit. We agree. The record is clear that E. Pierce Marshall did not dismiss his claims against Vickie Lynn Marshall seeking a declaration that decedent's trust and last will and testament were valid. Vickie Lynn Marshall clearly remained a party in the case. Notwithstanding the dismissal of claims by Vickie Lynn Marshall, the Texas probate court concluded that Vickie Lynn Marshall's claims were compulsory counterclaims under Texas law. See TEX. R. CIV. P. 97(a). Thus, Vickie Lynn Marshall was precluded from filing her claims in another court. See Ingersoll-Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 207 (Tex.1999) (citing Wyatt v. Shaw Plumbing Co., 760 S.W.2d 245, 247 (Tex.1988)).
 
 D
 
 119
 We agree with the contention of E. Pierce Marshall that the probate exception to federal court jurisdiction applies in this case because Vickie Lynn Marshall's claims were simply a disguised attack on J. Howard Marshall II's 1982 trust, as amended, and on the postmortem disposition of his property as provided in the trust.[15]
 
 VI
 
 120
 Due to our resolution of this appeal, we need not address E. Pierce Marshall's arguments concerning claim and issue preclusion, the Seventh Amendment to the U.S. Constitution, the Full Faith and Credit Clause, the Rooker-Feldman doctrine, the merits of the district court's judgment and interim rulings, nor whether the Texas Supreme Court would recognize the tort of tortious interference with an expected gift. We specifically withhold approval of the bankruptcy and district courts' holdings that Texas would recognize the tort of tortious interference with an expected gift.
 
 
 121
 We apply the probate exception to federal court jurisdiction and hold that all judgments awarded to Vickie Lynn Marshall against E. Pierce Marshall should be reversed. We vacate the district court judgment and remand with instructions for the district court to enter an order directing the bankruptcy court to vacate its judgment against E. Pierce Marshall individually. We direct dismissal of the claims of Vickie Lynn Marshall against E. Pierce Marshall for lack of jurisdiction.[16] We also instruct the district court to consider its lack of jurisdiction under the probate exception as applied to disputes between the parties with respect to procedural interim orders or sanctions awarded either in the district or bankruptcy court. The district court should also instruct the bankruptcy court to address the suggestion by Vickie Lynn Marshall's counsel that it should on remand proceed with Vickie Lynn Marshall's other causes of action. The district court should instruct the bankruptcy court that any further action by the bankruptcy court should be consistent with this opinion.
 
 
 122
 VACATED AND REMANDED.
 
 
 
 Notes:
 
 
 [1]
 J. Howard Marshall II created Compagnie Victoire as a vehicle to invest in Vickie Lynn Marshall's career as a model
 
 
 [2]
 When referring to the question whether J. Howard Marshall II intended to give Vickie Lynn Marshall a gift, we are referring to Vickie Lynn Marshall's allegation that J. Howard Marshall II intended to give her a further gift during his life in the form of a catch-all trust worth at least half the increase in value of all his property, if not half of all his property
 
 
 [3]
 Texas law also mandates that
 [a] trust in either real or personal property is enforceable only if there is written evidence of the trust's terms bearing the signature of the settlor or the settlor's authorized agent. A trust consisting of personal property, however, is enforceable if created by: (1) a transfer of the trust property to a trustee who is neither settlor nor beneficiary if the transferor expresses simultaneously with or prior to the transfer the intention to create a trust; or (2) a declaration in writing by the owner of property that the owner holds the property as trustee for another person or for the owner and another person as a beneficiary.
 TEX. PROP. CODE § 112.004.
 
 
 [4]
 There were also proceedings in Louisiana state court, which are not at issue hereSee In re Howard Marshall Charitable Remainder Annuity Trust, 709 So.2d 662 (La.1998).
 
 
 [5]
 Vickie Lynn Marshall sued E. Pierce Marshall in his individual capacity, as the agent for J. Howard Marshall II under a Power of Attorney, and in his capacity as the Trustee or dominant shareholder for each of the following: the J. Howard Marshall II Living Trust; the Marshall Museum and Library of Racing; Marshall Petroleum, Inc.; Marshall Oil & Gas L.L.C.; the Marshall Grandchildren's Trust; Marshall Petroleum, Inc. Stock Holding Trust; the Betty B. Marshall Living Trust; the J. Howard Marshall II Marital Trust Number Two; and the E. Pierce Marshall Family Trust
 
 
 [6]
 In his complaint entitled "Complaint to Determine the Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6)'' E. Pierce Marshall sought: "1. A determination that [E. Pierce Marshall's] claims against the Defendant have not been discharged; 2. An order granting [E. Pierce Marshall] recovery for his reasonable costs and attorney's fees incurred herein and pre- and post-judgment interest as allowed by law; and 3. An order granting [E. Pierce Marshall] such other relief as is just." Instead of adjudicating only the question whether any recovery that E. Pierce Marshall might obtain against Vickie Lynn Marshall for defamation was dischargeable, the bankruptcy court made several findings including that Vickie Lynn Marshall did not publish any defamatory statements about E. Pierce Marshall, she did not authorize her attorneys to publish defamatory statements concerning E. Pierce Marshall, she did not ratify any defamatory statements published by her attorneys, and she did not owe any debt to E. Pierce Marshall because she was not vicariously liable for any alleged defamatory statements published by her attorneys
 
 
 [7]
 In opening statement, Vickie Lynn Marshall's counsel told the jury that "[t]his case is about tortious interference with an intent to give an inter vivos gift."
 
 
 [8]
 This testimony apparently did not provoke the invocation of the Texas Deadman's StatuteSee Tex.R. Evid. 601(b).
 
 
 [9]
 On February 26, 2002, the bankruptcy court found that the Texas court's award of attorney's fees violated the bankruptcy discharge. The district court affirmed this order on August 15, 2002. This ruling is the subject of appeal No. 02-56603 and is addressed in a separate disposition
 
 
 [10]
 Lepard v. NBD Bank, 384 F.3d 232, 237 (6th Cir.2004), cited by E. Pierce Marshall, is a diversity case and does not shed any new light on whether the probate exception also applies to federal question cases.
 
 
 [11]
 Other circuits have considered the probate exception but justify their decisions without strict adherence to the doctrine as enunciated by the Supreme Court inMarkham. See, e.g., Lepard v. NBD Bank, 384 F.3d 232, 237 (6th Cir.2004) (stating that "`[t]he standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court'") (quoting McKibben v. Chubb, 840 F.2d 1525, 1529 (10th Cir.1988)); Storm v. Storm, 328 F.3d 941, 944 (7th Cir.2003) (stating that in determining whether it has jurisdiction over a particular case, a court should consider the policy goals underlying the probate exception, such as encouraging legal certainty, promoting judicial economy, avoiding unnecessary interference with the state law system, and respecting relative expertness of probate judges; also stating that courts should construe the probate exception narrowly); Breaux v. Dilsaver, 254 F.3d 533, 536 (5th Cir.2001) (stating that "[i]n determining whether a suit in federal court `interferes' with state probate proceedings, this court considers whether the plaintiff's claim `implicates the validity of the probate proceedings or whether the plaintiff is merely seeking adjudication of a claim between the parties'") (citations omitted); Mangieri v. Mangieri, 226 F.3d 1, 2 (1st Cir.2000) (stating that "courts tend to view the probate exception as extending to all suits `ancillary' to the probate of a will") (citing Georges v. Glick, 856 F.2d 971, 973 (7th Cir.1988)).
 
 
 [12]
 Because we answer the first two questions in the affirmative we do not reach this question in our analysis
 
 
 [13]
 Vickie Lynn Marshall cites another provision of the Texas Probate Code that applies to counties that are not large enough to have specialized probate courts. J. Howard Marshall II was domiciled in Harris County, where an established probate court is located. Therefore, Texas Probate Code section 5A(b) applies
 
 
 [14]
 As a general proposition, Vickie Lynn Marshall is correct that she was entitled to sue E. Pierce Marshall directly for a tort in her bankruptcy action. It is the probate exception that removes the claim from federal jurisdiction
 
 
 [15]
 We need not reach the third question under the second part of theMoser analysis as we have answered the first two questions in the affirmative.
 
 
 [16]
 E. Pierce Marshall's motion for summary reversal is denied as moot. E. Pierce Marshall's motion to certify to the Texas Supreme Court the question whether Texas recognizes a tort for intentional interference with the expectancy of a gift is denied. E. Pierce Marshall's request that we take judicial notice of the submitted papers is granted