130 Mich. App. 493 (1983)
343 N.W.2d 593
In re CONANT ESTATE
PRICE
v.
HOLMES
Docket No. 63744.
Michigan Court of Appeals.
Decided November 21, 1983.
James J. Kobza, P.C. (by Thomas J. O'Toole, Jr.), for petitioner.
Krueger & Lesica (by Fred J. Lesica), for respondents.
Before: V.J. BRENNAN, P.J., and SHEPHERD and E.A. QUINNELL,[*] JJ.
SHEPHERD, J.
Petitioner appeals as of right from the probate court's order dismissing her petition to have declared void certain property transactions between the decedent, Elizabeth Pearl Conant, and respondents.
On appeal, petitioner alleges that a presumption of undue influence existed which respondents failed to rebut. According to petitioner, the probate court erred both in finding that no undue influence existed and in dismissing the petition *496 upon the close of petitioner's proofs since respondents could not have rebutted the presumption of undue influence without presenting their own arguments. We disagree.
Decedent died on July 7, 1980. At the time of her death, she had been a friend of respondent Viola Holmes (who was the wife of respondent Teddy Holmes and the mother of respondent Callie Gaskill) for nearly 30 years. For the four to five years immediately preceding her death, decedent had been in the almost constant care and company of Viola Holmes. By December, 1978, Mrs. Holmes was assisting the decedent by driving her to appointments and on errands, paying her bills, and writing checks for her. On March 29, 1976, decedent granted Mrs. Holmes a joint interest in her savings and checking accounts. On July 31, 1976, she executed a general power of attorney in favor of Mrs. Holmes.
On May 9, 1977, decedent executed a will granting Mrs. Holmes the testamentary power to distribute all of her tangible personal property to parties to be designated later. Respondents were to take 20% of the residue and remainder of the estate. To her adopted son, the decedent intentionally left nothing and to the petitioner, her adopted daughter, she left a ten percent interest in the balance of the estate. The estate at that time included miscellaneous personal property including the funds held jointly with Mrs. Holmes in various bank accounts and a vendor's interest in a land contract executed for the sale of decedent's farm.
In January, 1979, decedent became ill and was hospitalized. During this time, Mrs. Holmes withdrew the entire balance of the joint savings account (approximately $10,000), allegedly upon the *497 advice of decedent's attorney, in order to prevent decedent's relatives from gaining control of the accounts. On February 27, 1979, shortly after she was released from the hospital, decedent conveyed to respondents a joint interest in the land contract covering the family farm. By this date then, decedent's savings account and real property interest had been effectively removed from her will.
Subsequent to decedent's death and ancillary to the probate of her will, petitioner commenced a proceeding seeking the return to decedent's estate of the land contract interest and the assets of the joint savings account. Petitioner alleged that the transfers were the product of Mrs. Holmes' undue influence upon decedent. A hearing was held and at the close of petitioner's proofs, the probate court, on respondents' motion, dismissed the petition.
The only question to be resolved by this Court in the instant case is whether respondents brought forth sufficient evidence to rebut the presumption of undue influence described in Kar v Hogan, 399 Mich 529, 537; 251 NW2d 77 (1976), since an affirmative answer disposes of both claims of error raised by petitioner.
To establish undue influence it must be shown that the grantor was subject to threats, undue flattery, fraud, misrepresentation, or physical or moral coercion "sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will". Id. The law presumes undue influence, however, in a transaction where the evidence establishes "(1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary or an interest which he represents benefits from a transaction, and (3) the fiduciary had an *498 opportunity to influence the grantor's decision in that transaction". Id. The establishment of this presumption creates a "mandatory inference" of undue influence, shifting the burden of going forward with the evidence to the defendant. However, the burden of persuasion remains with the party asserting undue influence. If the defending party fails to present evidence to rebut the presumption, then, the plaintiff has satisfied the burden of persuasion. Kar, supra, pp 541-542; Detroit Bank & Trust Co v Grout, 95 Mich App 253, 272; 289 NW2d 898 (1980); Daane v Lovell, 83 Mich App 282, 290; 268 NW2d 377 (1978).
In the instant case, a fiduciary relationship existed between decedent and Mrs. Holmes by virtue of the grant of a general power of attorney. Mrs. Holmes benefited from the creation of interests in the savings account and the land contract. The nature of the relationship between the decedent and Mrs. Holmes was such that Mrs. Holmes had the opportunity to influence decedent's decisions as regards those interests. Although the probate court failed to first specifically find that a presumption of undue influence had arisen, we agree with the probate court's finding that the transactions were not the result of undue influence.
This case involves an action sounding in equity, Detroit Bank & Trust Co, supra; such appeal is de novo. Smith v General Mortgage Corp, 73 Mich App 720, 728; 252 NW2d 551 (1977). This Court must examine the entire record and weigh all of the evidence, subjecting the trial court's findings of fact to "closer scrutiny than we would employ on review of a jury verdict". Daane, supra, p 284. However, this Court accords considerable weight to the lower court's findings of fact in an equity case in light of its special opportunity to hear the *499 evidence presented and see the witnesses before it. Stachnik v Winkel, 394 Mich 375, 383; 230 NW2d 529 (1975). In the present case, after reviewing the record and weighing the evidence of undue influence, both pro and con, we find that, despite a presumption of undue influence, the probate court correctly determined that the evidence on the record indicates that the challenged transactions were not the result of undue influence. The probate court's failure to specifically mention the presumption, then, is irrelevant, since Mrs. Holmes came forward with sufficient evidence to rebut the presumption and petitioner failed to carry her burden of persuasion.
Petitioner first contends that the estate is entitled to the $10,000 from the savings account held jointly by decedent and Mrs. Holmes. The statutory provision authorizing creation of joint bank accounts with rights of survivorship, MCL 487.703; MSA 23.303, creates a presumption that funds placed in such accounts are intended to be the property of the survivor. In the present case, however, this presumption is countered with the presumption of undue influence arising pursuant to Kar. Faced with a similar situation, this Court in Habersack v Rabaut, 93 Mich App 300, 305-306; 287 NW2d 213 (1979), stated:
"Due to this latter presumption [of undue influence], the burden devolved upon the defendant to show, by a preponderance of the evidence, that undue influence was not operative. * * * In satisfying this burden, the defendant is benefited by a permissible inference that the joint bank account was intended to pass to the survivor. This permissible inference remains as a vestige of the rebutted statutory presumption."
Four other factors examined by the Habersack *500 Court in determining that the defendant had not exercised undue influence over the decedent exist to a similar extent in the present case. First, there was testimony showing that decedent did not get along well with her children and intended to leave them little or nothing of her estate. Second, decedent gave to Mrs. Holmes a joint interest in her bank accounts well before her hospitalization and death, and there was testimony that decedent was, at that time, mentally alert and of sound mind. Third, Mrs. Holmes had provided not only services but friendship to decedent, took care of her needs, and visited her frequently. Finally, Mrs. Holmes never asked for reimbursement for the services which she provided to decedent. This evidence is sufficient to support the probate court's finding that decedent freely intended the money in the joint bank accounts to go to Mrs. Holmes and that respondents did not exercise undue influence over decedent. Any presumption was therefore satisfactorily overcome.
Petitioner also seeks to void the 1979 deed and land contract assignment on the basis of undue influence. This assignment was made in 1979, shortly after decedent was released from the hospital. By that time, Mrs. Holmes was attending to decedent's physical and social needs as well as her financial affairs. Mrs. Holmes testified that hostilities had long existed between petitioner and decedent and that the decedent did not want her family to have her money. Decedent's attorney testified that, although he had known decedent for many years, she rarely spoke of her daughter. He had executed decedent's will, the power of attorney, and the deed and land contract assignment at decedent's, not respondents', request. Dr. Beechnau, decedent's physician, testified by deposition *501 that decedent was generally well aware of the true state of her affairs. For the last two years of her life, although she occasionally exhibited a certain degree of mental lapse, as evidenced by some forgetfulness, her mind had been clear about what she intended to do with her property. She told Dr. Beechnau that she did not want her children to take any of her property. She was in full control of her actions and of sound mind at the time of both transfers to respondents.
The probate court found that the existence of the fiduciary relationship between decedent and Mrs. Holmes, as created by the grant of a power of attorney, had nothing to do with the creation of the joint interest in the savings account and the land contract. Further, the probate court found that it was clearly decedent's true intent to convey the property. Although we do not deem these two findings in and of themselves to be dispositive, we believe that sufficient corroborative evidence was placed on the record to show an absence of undue influence and we concur in the probate court's dismissal of the petition.
While petitioner argues that respondents were never "put to their proofs" to rebut the presumption of undue influence, since the case was dismissed at the close of petitioner's proofs, we do not agree that the timing of the probate court's dismissal rendered it impossible for respondents to rebut the mandatory inference of undue influence which had been established by petitioner's proofs. Kar, supra, simply requires respondents to come forward with evidence to rebut the presumption. No mandatory procedure for doing so is prescribed. While this case was dismissed at the close of petitioner's proofs, the respondents had already put the majority of their case on the record. Viola *502 Holmes had testified by both direct and cross-examination. She stated that decedent was not close to her children, that petitioner seldom visited her mother, and that respondents cared for and were close to decedent in the last years of her life. Decedent's attorney also testified that decedent was not close to her children and had acted purposefully and independently in legal matters. The testimony of decedent's physician was available by deposition. Although petitioner may permissibly challenge the weight of respondents' evidence, she cannot argue here that it was not presented, since it clearly was.
Based on our de novo review of the record in this case, we conclude that respondents offered sufficient evidence to satisfactorily rebut the presumption of undue influence. The trial court's failure to verbalize on the record the presumption accorded petitioner did not deprive petitioner of full consideration of her claim. The court held that petitioner failed to carry her burden of persuasion and, given the state of the evidence presented by respondents during the course of the hearing, we are convinced that there was sufficient evidence in the record to justify the finding of the probate court.
Affirmed. Costs to appellees.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.