# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

04-6059EM

_____

In re:                                              *
                                                    *
Louise M. Litzinger,                                *
                                                    *
         Debtor.                                    *
                                                    *
Louise M. Litzinger,                                *
                                                    *          Appeal from the United States
         Debtor-Appellant,                          *          Bankruptcy Court for the
                                                    *          Eastern District of Missouri
         v.                                         *
                                                    *
The Estate of Victor Litzinger,                     *
                                                    *
         Claimant-Appellee.                         *

_____

Submitted: February 8, 2005
Filed: March 15, 2005 (Corrected March 25, 2005)

_____

Before KRESSEL, Chief Judge, DREHER, and MAHONEY, Bankruptcy Judges.

_____

DREHER, Bankruptcy Judge.

     This is an appeal from an order of the bankruptcy court allowing a claim by The Estate of Victor Litzinger in the amount of $130,553.38. In allowing the claim the bankruptcy court held that debtor had participated in the conversion of at least

that amount of probate estate assets.  We remand with instructions to the bankruptcy court to address a jurisdictional issue which was never raised or briefed before the bankruptcy court or this Bankruptcy Appellate Panel.

## BACKGROUND AND FACTS

Victor Litzinger (Victor) had two heirs, his nephews Guy Litzinger (Guy) and Warren Rosenfelder (Warren).  Debtor, Louise Litzinger (Louise), was Guy's wife.  Victor was an elderly man when, on July 7, 1997, he signed a durable power of attorney naming Guy his attorney-in-fact.  The power of attorney gave Guy full authority, in his sole discretion, to deal with Victor's assets without limitation, except those imposed by statute.  Only a few months later, on October 16, 1997, Victor executed a Last and Will and Testament which named Guy as Personal Representative of Victor's estate.  After making a few special bequests, the will left all assets which Victor owned at the time of his death to Guy and Warren equally.

Using Victor's assets, on March 19, 1998, Guy opened a brokerage account (Victor/Guy account) at a brokerage company where Guy and Louise also had a joint account (Guy/Louise account).  No one could find any documents evidencing the opening of this account.  Guy did sign a Substitute W-9 which indicated that the account was opened as a joint account and the evidence showed that the brokerage company considered the account a joint account with right of survivorship.  The parties further stipulated that Victor signed no document in connection with the opening of the Victor/Guy account.

Between July 1997 and Victor's death, Guy paid all of Victor's living expenses out of a separate checking account which Victor owned.  No draws were made on the Victor/Guy account between the time it was opened and Victor's death.

On January 7, 2000, Victor died. Shortly thereafter, on February 9, 2000, Guy signed a Letter of Authorization closing the Victor/Guy account. Pursuant to instructions from Guy, the assets in the Victor/Guy account, valued on January 1, 2000, at $219,392.86, were transferred to the Guy/Louise account. Immediately prior to the transfer, the Guy/Louise Account had a balance of $51,367.83. The only evidence of Louise's complicity in this transfer was the testimony of both Guy and Louise that, at Guy's direction, she called the broker to find out what steps needed to be taken to effect a transfer and then conveyed that information to Guy. Guy was the only person legally authorized to effect the transfer. Louise testified she thought the transfer was perfectly proper because Victor wanted Guy to receive the account and Warren to receive his real estate.

In March 2000 Guy, as Personal Representative of Victor's estate, opened Victor's probate estate in Michigan. On November 6, 2001, Guy filed an inventory in the Michigan probate proceedings which listed a parcel of real estate in Michigan and the Guy/Louise Account as Victor's only assets. This is apparently the first and only time until the claim was filed in this case that Guy took the position that the money in the Guy/Louise account was an asset of Victor's estate. On March 14, 2003, Guy resigned as Personal Representative of the probate estate and Warren was substituted in his place. The record does not indicate whether there has been any other activity in the Michigan probate proceeding.

During 2000, Guy and Louise withdrew $121,616.35 from the Guy/Louise Account for payment of their own living expenses. In an action which apparently sparked Guy's ire, Louise herself withdrew $40,000 of that sum from the account shortly before she filed for divorce on December 29, 2000.

Louise testified that she believed they were entitled to the money upon Victor's death. While Guy's current position is that the Guy/Louise account belongs to the estate, he took multiple actions which demonstrated otherwise. For example, Guy

and Louise filed joint income tax returns for 2000 and 2001 in which they claimed the gains on the Guy/Louise account as theirs and paid taxes on them. Guy filed his own separate tax returns for 2002 and 2003, claiming once again that the earnings on the Guy/Louise account were his, and he paid taxes on them. Meanwhile, on January 6, 2003, Dorothy Litzinger, Guy's mother, obtained a judgment against Guy and Louise for $160,625.00 she claimed they both owed her. On February 28, 2003, Dorothy garnished the Guy/Louise account and obtained $90,553.38. Guy, who was still the Personal Representative of Victor's estate at that time, took no steps on behalf of Victor's estate to object to the garnishment. He testified that he failed to do so because he thought he and Louise owed his mother the money. Shortly thereafter, Guy resigned as Personal Representative and Warren was appointed in his place.

On August 13, 2003, Louise filed for Chapter 7 relief under the Bankruptcy Code. On December 2, 2003, Guy, on behalf of the estate, filed a proof of claim asserting that the estate was owed $130,553.38 ($40,000 for the amount taken by Louise from the Guy/Louise account on the day she filed for divorce and $90,553.38 taken by the garnishment). The parties later agreed that, while the claim should have been filed by Warren, this would not be considered a cause for objection to the claim. The estate's theory was that the transfer of funds from the Victor/Guy account to the Guy/Louise account was a conversion of the probate estate's property. The estate asserted that Louise was culpable because she knowingly participated in the conversion and took the benefit of the funds.

After trial, the bankruptcy court allowed the estate's claim. First, the bankruptcy court noted that the parties had agreed that Missouri law applied to the question of whether there had been a conversion and itself agreed that such was the applicable law based on the quantity and quality of contacts with the State of Missouri. The bankruptcy court went on to hold that under Missouri law conversion consists in the wrongful unauthorized assumption of the right of ownership over personal property of another, that the money in the Victor/Guy account was subject

to a fiduciary duty on Guy's part not to use it as his own, that Louise knew of the durable power of attorney and that Guy was not authorized to use the money as his own, and that when Guy transferred the funds from the Victor/Guy account to the Guy/Louise account both Guy and Louise wrongfully assumed ownership of the account. The bankruptcy court held Louise liable for conversion because she assisted Guy in the conversion of the account and used the funds as her own. The bankruptcy court rejected Louise's argument that Guy's filing of the claim on behalf of the probate estate was a wrongful attempt to keep the money out of the divorce proceedings which are still pending. The bankruptcy court further rejected the argument that Guy's actions had been inconsistent with his current claim that the Victor/Guy account was property of Victor's estate and he was estopped from making that claim now. While in final argument at the conclusion of the evidence the parties discussed Missouri law regarding who owned the Victor/Guy account when it was transferred to the Guy/Louise account, no one raised the effect of Missouri or Michigan probate law on the ownership issue and everyone assumed that the bankruptcy court had subject matter jurisdiction of the dispute.

DECISION

A.    STANDARD OF REVIEW

"The question of subject matter jurisdiction is subject to *de novo* review. When subject matter jurisdiction is at issue, we are required to reach the jurisdictional question before turning to the merits." United Taconite, LLC. v. Minnesota Dept. of Rev. (In re Eveleth Mines, LLC), 318 B.R. 682, 686 (B.A.P. 8th Cir. 2004)(*citing* Hoffman v. Bullmore (In re Nat'l Warranty Insurance Risk Retention Group), 384 F.3d 959, 962 (8th Cir. 2004). Even though the parties did not specifically raise a jurisdictional issue, as with all appellate courts, we have an obligation to examine our own jurisdiction. Vincent v. Fairbanks Capital Corp. (In re Vincent), 301 B.R. 734, 736-37 (B.A.P. 8th Cir. 2003)(*citing* Lewis v. United States, 992 F.2d 767, 771 (8th

Cir. 1993)). Similarly, the trial court had an obligation to examine its own jurisdiction even though no party raised it. *Id*.

This Court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. Tax 58 v. Froehle (In re Froehle), 286 B.R. 94, 96 (B.A.P. 8th Cir. 2002). "A finding [of fact] is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Waterman v. Ditto (In re Waterman), 248 B.R. 567, 570 (B.A.P. 8th Cir. 2000)(*citing* Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)).

B.    THE ISSUES RAISED ON APPEAL

Louise raises three issues on appeal. First, she argues there was inadequate evidence to support the finding that she participated in the conversion. Second, she argues that, because the probate estate was making a claim for money owed, a general debt arising out of her $40,000 withdrawal and the $90,553.38 garnishment, it was required to trace the commingled assets. Third, she argues that Guy was estopped from arguing that the Guy/Louise account was an asset of Victor's estate because he took numerous steps which evidenced his belief that the account belonged to him, including failing to object on behalf of the probate estate when his mother garnished the account to pay his personal obligation to her. In response, the estate argues that the bankruptcy court was not clearly erroneous in finding that Louise participated in the conversion; that under Missouri Revised Statute section 473.340 if money is placed in trust and wrongfully transferred there is no need to trace; and that Victor's self interested and wrongful actions cannot be attributed to the estate for estoppel purposes.

C.      THE JURISDICTIONAL ISSUE

We think these arguments miss the mark. The important question is whether resolution of this dispute lies exclusively within the jurisdiction of the Michigan probate court. This jurisdictional question was not raised by the parties or considered by the bankruptcy court. Since the issue of ownership of the Victor/Guy account was the centerpiece of resolving this claim dispute, we think the bankruptcy court must first determine its own jurisdiction before the bankruptcy court resolves the claim dispute. We have reached this conclusion based upon the following discussion of the law.

1.      CONVERSION

Conversion is the "unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." Mertz v. Blockbuster, Inc., 32 S.W.3d 130, 133 (Mo. App. 2000)(*quoting* Colton, McMichael, Lester, Auman, Visnovske, Inc. v. Mueller, 896 S.W.2d 741, 742 (Mo. App. 1995)). Under Missouri law, which we will assume applies for purposes of determining whether a conversion occurred, conversion can occur in one of three ways:

> 1) by tortious taking; 2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to [the] owner's rights; or 3) by refusal to give up possession to the owner on demand, even though the defendant's original possession of the property was proper.

Walker v. Henke, 992 S.W.2d 925, 930 (Mo. App. 1999)(*quoting* Collins v. Trammell, 911 S.W.2d 635, 637 (Mo. App. 1995)). All three types of conversion require proof that the property alleged to have been converted was owned by someone other than the alleged converter because you cannot steal from yourself. Here, the question of who owned the Guy/Victor account on the date of the alleged

conversion when that account was rolled into the Guy/Louise account was an essential element of the bankruptcy court's findings, but one that the bankruptcy court may have been without jurisdiction to make.

### 2. THE DURABLE POWER OF ATTORNEY

The durable power of attorney, as the bankruptcy court seemed to have concluded, did not allow Guy to take Victor's funds and make them his own before Victor's death. If Missouri law applies, the duties of attorney in fact are set forth in Missouri Revised Statute section 404.714, which states, in part, that:

> An attorney in fact who elects to act under a power of attorney is under a duty to act in the interest of the principal and to avoid conflicts of interest that impair the ability of the attorney in fact so to act. A person who is appointed an attorney in fact under a power of attorney, either durable or not durable, who undertakes to exercise the authority conferred in the power of attorney, has a fiduciary obligation to exercise the powers conferred in the best interests of the principal, and to avoid self-dealing and conflicts of interest, as in the case of a trustee with respect to the trustee's beneficiary or beneficiaries; and in the absence of explicit authorization, the attorney in fact shall exercise a high degree of care in maintaining, without modification, any estate plan which the principal may have in place, including, but not limited to, arrangements made by the principal for disposition of assets at death through beneficiary designations, ownership by joint tenancy or tenancy by the entirety, trust arrangements or by will or codicil.

MO. REV. STAT. § 404.714. This statute prohibited Guy from commingling the accounts or making a gift to himself. *See* In re the Estate of Herbert, 2004 WL 2282143 (Mo. App. 2004)(unpublished). Further, section 404.710.6(3) requires that written authorization would have been required by Victor prior to Guy making any gift to himself. *See* Id. at *12.

If Michigan law applies the result would be the same. Under Michigan law, the grant of a power of attorney "forms a fiduciary relationship between the grantor and grantee." Kegerreis v. Smit (In re Harrington), 2000 WL 33421289 *3 (Mich. App. 2000)(unpublished)(*citing* In re Conant Estate, 343 N.W.2d 593, 595 (Mich. 1984)). A fiduciary is precluded from creating a joint account, without the express consent of the grantor, because "[a] fiduciary in his personal capacity shall not personally derive any profit from the purchase, sale, or transfer of any property of the estate." MICH. STAT. ANN. § 561(1)(1999); *see also* Harrington, 2000 WL 33421289 *3 (holding that § 561(1) fiduciary duties apply to an attorney-in-fact).

Thus, the bankruptcy court's assumption that the funds in the Victor/Guy account were Victor's property on the date of his death, in spite of Guy's transfer of Victor's assets into a joint account using the durable power of attorney, was correct. Guy had no right to transfer Victor's money to himself or into a joint account with right of survivorship prior to Victor's death. The transfer to the Victor/Guy account was a breach of fiduciary duty and void. The real issue, however, is whether ownership devolved to Guy and Warren on the date of death so that Guy was free to pass that interest to Louise by depositing the proceeds into the Guy/Louise joint account.

3.    MICHIGAN AND MISSOURI PROBATE LAW

It appears from our initial analysis that in both Michigan and Missouri, the beneficiaries under a will become the owner of the property bequeathed to them on the date of the decedent's death.[1]

---

[1]The Michigan probate code was revised effective April 1, 2000, after the date of Victor's death. The revised act, however, is applicable "to a proceeding in court pending on that date or commenced after that date regardless of the time of the decedent's death" unless the court decides that "former procedure should be made applicable in a particular case in the interest of justice or because of the

Pursuant to Michigan law:

> An individual's power to leave property by will, and the rights of creditors, devisees, and heirs to his or her property, are subject to the restrictions and limitations contained in this act to facilitate the prompt settlement of estates. Upon an individual's death, the decedent's property devolves to the persons to whom the property is devised by the decedent's last will or to those indicated as substitutes for them in cases involving lapse, disclaimer, or other circumstances affecting devolution of a testate estate, or in the absence of testamentary disposition, to the decedent's heirs or to those indicated as substitutes for them in cases involving disclaimer or other circumstances affecting devolution of an intestate estate, subject to homestead allowance, family allowance, and exempt property, to rights of creditors, to the surviving spouse's elective share, and to administration.

MICH. COMP. LAWS § 700.3101(2002).

While the personal representative is entitled to exercise the "same power over the title to estate property that an absolute owner would have, in trust, however, for the benefit of creditors or others interested in the estate," MICH. COMP. LAWS § 700.3711, "tangible personal property may be left with or surrendered to the person presumptively entitled to that property unless or until, in the personal representative's judgment, possession of the property will be necessary for purposes of administration." MICH. COMP. LAWS § 700.3709. If the bankruptcy court lacks jurisdiction, however, all of these issues should be left to the Michigan probate court to unwind and should not involve the bankruptcy court until the probate estate is administered.[2]

infeasibility of applying this act's procedure." MICH. COMP. LAWS § 700.8101(2)(b).

[2]We should also note that Guy, not Louise, was responsible to the estate on Victor's death with settling and distributing assets of the estate and that Guy was liable to the estate for any losses suffered. "The personal representative is a

Missouri law is comparable. Pursuant to Missouri Revised Statute section 473.260 entitled "Devolution of Estate at Death," Guy and Warren became the legal owners of all of Victor's property on the date of his death, except for any special bequests made in the will that are not at issue in this case. The section states:

> When a person dies, his real and personal property, except exempt property, passes to the persons to whom it is devised by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as his heirs; but it is subject to the possession of the executor or administrator and to the election of the surviving spouse and is chargeable with the expenses of administering the estate, the payment of other claims and allowances to the family, except as otherwise provided in this law.

MO. REV. ST. § 473.260. Thus, under Missouri law, if it applies, at the time that Guy transferred the property from his joint account with Victor to his joint account with Louise, he may have been the legal owner of the asset, subject to Warren's interest and to payment of the expenses of administration of the estate. *See* State v. Cox, 784 S.W.2d 244, 245 (Mo. Ct. App. 1989) (stating that, according to § 473.260, title to property passes to the beneficiaries of a will at the testator's death); Basler v. Delassus, 690 S.W.2d 791, 795 (Mo. 1985) (stating that § 473.260 does not distinguish between real and personal property). In addition, under section 473.260 Guy, as the executor of the estate, also had a right of possession to the property.

---

fiduciary of the estate who is charged with settling and distributing the estate. The personal representative must use his authority in the best interest of the estate and in the interests of the parties." McTaggart v. Lindsey, 509 N.W.2d 881, 884 (Mich. App. 1993)(*citing* Steinway v. Bolden, 460 N.W.2d 306 (1990)). "A fiduciary is liable for a loss to an estate that arises from embezzlement by the fiduciary [or] for a loss through commingling estate money with the fiduciary's money[.]" MICH. COMP. LAWS § 700.1308. (same under the prior statute MICH. COMP. LAWS 700.544(1999)).

Thus, in applying either Michigan or Missouri law, in our reading of the law, Guy was the likely owner of the Guy/Victor account, along with Warren, upon Victor's death, subject to specific requests and claims of administration. But, because ownership of the account was a cornerstone of the bankruptcy claims resolution process and of the probate administration process, the bankruptcy court must first determine if it had jurisdiction to determine that the estate had any interest in the property.

4.    THE PROBATE EXCEPTION TO BANKRUPTCY COURT JURISDICTION

The parties agree that the bankruptcy court had jurisdiction over the allowance or disallowance of claims against the estate. 28 U.S.C. § 157(b)(2)(B). The claim objection, however, raised an issue that relates to the settlement of the estate of a deceased person. In Michigan, probate courts have exclusive jurisdiction, including but not limited to the following proceedings:

> (a) Matters relating to the settlement of the estate of a deceased person, whether testate or intestate, who was at the time of death domiciled in the county or was at the time of death domiciled out of state leaving an estate within the county to be administered, including, but not limited to, the following proceedings:
> (i) The internal affairs of the estate.
> (ii) Estate administration, settlement, and distribution.
> (iii) Declaration of rights involving estates, devisees, heirs, and fiduciaries.
> (iv) The construction of a will.
> (v) The determination of heirs.

MICH. COMP. LAWS § 700.21(1999)[3]

---

[3]We assume that jurisdiction is determined as of the date of death, however, the revised statute, MICH. COMP. LAWS § 700.1302(2002), is essentially the same.

A federal court may:

> entertain suits in favor of creditors, legatees and heirs and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in custody of the state court.

Markham v. Allen, 326 U.S. 490, 494 (1946) (internal quotation marks omitted). A two-part inquiry has been used by the Second Circuit to determine whether a particular lawsuit implicates "probate matters." Moser v. Pollin, 294 F.3d 335, 340 (2nd Cir. 2002). "An affirmative answer to either prong requires that the case be dismissed from federal court for lack of subject matter jurisdiction." *Id.* First, is the bankruptcy court being asked to directly probate a will or administer an estate? Second, does entertaining the action cause the bankruptcy court to "'interfere with the probate proceedings or assume general jurisdiction of the probate or control of property in the custody of the state court." *Id.* (citation omitted). The Second Circuit held that the "interference prong" was in practice "the workhorse of the probate exception" and determined that an impermissible interference may arise in one of three ways: if, by adjudicating the complaint, the federal district court (1) "interferes with the probate proceedings;" (2) "assumes general jurisdiction of the probate;" or (3) asserts "control of property in the custody of the state court." *Id.* (*quoting* Markham, 326 U.S. at 494; and *citing* 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3610 (2d ed. 1984)).

The decision of the bankruptcy court may have done all three although, at least initially, that is for the bankruptcy court to decide. We are concerned that the bankruptcy court confirmed the statement of inventory filed by Guy and in effect resolved to distribute the account assets already taken by Guy, back to Guy via

-13-

Louise's bankruptcy estate.  But, had the bankruptcy court ruled otherwise and sustained the objection to the claim, the bankruptcy could have effectively removed the asset from the probate estate.  Louise would have been declared to have no liability to the probate estate for taking an asset which may belong to the probate estate.  Moreover, were we to reverse the bankruptcy court's decision, we would, in effect, determine that the estate had no ownership interest in the asset at Victor's death.

Victor apparently owned two assets on the date of his death;  the money in the Victor/Guy joint account and real property located in Michigan.  The record suggests that Louise believed that the estate would be divided in just that fashion.  Guy would receive the money in the account, Warren would receive the property.  Depending upon the value of the real estate and the expenses of administration, that may have been a reasonable assumption.  Several scenarios may arise if the Michigan probate court has exclusive jurisdiction.  The probate court could decide that Guy has already received his distribution from the estate when he transferred Victor's money into the Guy/Louise joint account.  Warren would then receive an equivalent value from the sale of the  Michigan real property, and the sale proceeds may be adequate to pay all the administrative expenses.  As a result, the  estate  may  be  settled  without the necessity to recover anything  from either Guy or from Louise's bankruptcy estate.  Our concern is that the bankruptcy court's decision to allow Victor's estate to recover anything from Louise may impact the distribution of property of the estate by preemptorily denying the probate court the opportunity to decide that Guy has already received his distribution.  Pursuant to Michigan law, section 700.21(a)(ii), it seems that only the probate court has jurisdiction over the settlement and distribution over the property of the decedent.

CONCLUSION

If the bankruptcy court decides it is without jurisdiction, it cannot determine the validity or amount of the claim until the estate is settled and the distribution determined by the probate court. Accordingly, we remand to the bankruptcy court with instructions that it vacate its order allowing the claim and that it consider the extent of its own jurisdiction.

_____

MAHONEY, Bankruptcy Judge, concurring

I concur in the result only. I agree that a determination of the bankruptcy court's subject matter jurisdiction needs to be made by the bankruptcy judge prior to any determination with regard to allegations of conversion. However, I do not see either the wisdom or the necessity for an appellate court to advise the trial court concerning the law of Michigan or Missouri on the issue of subject matter jurisdiction. If this case comes before us on another appeal, we will certainly have the opportunity to discuss our understanding of Michigan and Missouri law at that time.