# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

05-6035EM

_____

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| Louise M. Litzinger, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Louise M. Litzinger, | * | |
| | * | Appeal from the United States |
| Debtor-Appellant, | * | Bankruptcy Court for the |
| | * | Eastern District of Missouri |
| v. | * | |
| | * | |
| The Estate of Victor Litzinger, | * | |
| | * | |
| Claimant-Appellee. | * | |

_____

Submitted: March 2, 2006
Filed: April 4, 2006

_____

Before KRESSEL, Chief Judge, FEDERMAN, and VENTERS, Bankruptcy
Judges.

_____

KRESSEL, Chief Judge.

This is an appeal from an order of the bankruptcy court allowing a claim by the
Estate of Victor Litzinger in the amount of $130,553.38. In allowing the claim the

bankruptcy court held that debtor had participated in the conversion of at least that amount of Victor's probate estate's assets. We affirm in part and reverse in part.

## BACKGROUND[1]

Victor Litzinger had two heirs, his nephews Guy Litzinger and Warren Rosenfelder. The debtor, Louise Litzinger, is Guy's estranged wife. Victor was an elderly man when, on July 7, 1997, he signed a durable power of attorney naming Guy his attorney-in-fact. The power of attorney gave Guy full authority, in his sole discretion, to deal with Victor's assets without any limitations, except those imposed by statute. A few months later, on October 16, 1997, Victor executed a Last Will and Testament which named Guy as personal representative of Victor's estate. After making a few special bequests, the will left all assets which Victor owned at the time of his death to Guy and Warren equally.

Using Victor's assets, on March 19, 1998, Guy opened a brokerage account at Edward Jones in the names of Victor and Guy Litzinger. No one could find any documents evidencing the opening of this account. Guy did sign a Substitute W-9 which indicated that the account was opened as a joint account and the brokerage company considered the account a joint account with the right of survivorship. Victor signed no document in connection with the opening of the Victor/Guy account.

Between July 1997 and Victor's death, Guy paid all of Victor's living expenses out of a separate checking account which Victor owned. No draws were made on the Victor/Guy account between the time it was opened and Victor's death.

---

[1]     Most of these facts are from our earlier opinion. *Litzinger v. Litzinger (In re Litzinger),* 322 B.R. 108 (B.A.P. 8th Cir. 2005).

On January 7, 2000, Victor died. Shortly thereafter, on February 9, 2000, Guy signed a Letter of Authorization closing the Victor/Guy account. Pursuant to instructions from Guy, the assets in the Victor/Guy account, valued on January 1, 2000, at $219,392.86, were transferred to an existing account in the names of Guy and Louise jointly. Immediately prior to the transfer, the Guy/Louise Account had a balance of $51,367.83. At Guy's direction, Louise called the broker to find out what steps needed to be taken to effect a transfer and then conveyed that information to Guy. However, Guy was the only person who could actually make the transfer.

In March 2000, as personal representative of Victor's estate, Guy opened Victor's probate estate in Michigan. On November 6, 2001, Guy filed an inventory in the Michigan probate proceedings which listed a parcel of real estate in Michigan and the Guy/Louise Account as Victor's only assets. This is apparently the first and only time until the claim was filed in this case that Guy took the position that the money in the Guy/Louise account was an asset of Victor's estate. For example, Guy and Louise filed joint income tax returns for 2000 and 2001 in which they claimed the gains on the Guy/Louise account as theirs and paid taxes on them. Guy filed individual tax returns for 2002 and 2003, claiming once again that the earnings on the Guy/Louise account were his, and he paid taxes on them. However, Louise believed all along that she and Guy were entitled to the money upon Victor's death.

During 2000, Guy and Louise withdrew $121,616.35 from the Guy/Louise Account for payment of their own living expenses. Louise herself withdrew $40,000 of that sum from the account shortly before she filed for divorce on December 29, 2000. The divorce is still pending.

Meanwhile, on January 6, 2003, Dorothy Litzinger, Guy's mother, obtained a judgment against Guy and Louise for $160,625.00. On February 28, 2003, Dorothy garnished the Guy/Louise account and obtained $90,553.38. Guy, who was still the personal representative of Victor's estate at that time, took no steps on behalf of

Victor's estate to object to the garnishment. Shortly thereafter, on March 14, 2003, Guy resigned as personal representative of Victor's estate, and Warren was appointed in his place.

On August 13, 2003, Louise filed a petition under Chapter 7 of the Bankruptcy Code. On December 2, 2003, even though he had resigned as personal representative nine months earlier, Guy filed a proof of claim on behalf of the probate estate, asserting that the estate was owed $130,553.38. The proof of claim stated that Louise was guilty of conversion when she withdrew $40,000.00 from the Guy/Louise account on the eve of her divorce and when Dorothy garnished $90,553.38 in the account. The parties later agreed that, while the claim should have been filed by Warren, this would not be considered grounds for objection to the claim. While the court also gave the estate the opportunity to amend its proof of claim, it declined to do so.

After trial, the bankruptcy court allowed the estate's claim in the amount of $130,553.38. First, the bankruptcy court noted that the parties had agreed that Missouri law applied to the question of whether there had been a conversion based on the quantity and quality of contacts with the State of Missouri. The bankruptcy court went on to hold that under Missouri law conversion consists of the wrongful unauthorized assumption of the right of ownership over personal property of another, that the money in the Victor/Guy account was subject to a fiduciary duty on Guy's part not to use it as his own, that Louise knew of the durable power of attorney and that Guy was not authorized to use the money as his own, and that when Guy transferred the funds from the Victor/Guy account to the Guy/Louise account both Guy and Louise wrongfully assumed ownership of the account. The bankruptcy court held Louise liable for conversion because she assisted Guy in the conversion of the account and used the funds as her own. The bankruptcy court rejected Louise's argument that Guy's filing of the claim on behalf of the probate estate was a wrongful attempt to keep the money out of the divorce proceedings which were still pending. The bankruptcy court further rejected the argument that Guy's actions had been

-4-

inconsistent with his current claim that the Victor/Guy account was property of Victor's estate and he was estopped from making that claim now. Louise appealed. We remanded to the bankruptcy court to review whether it had jurisdiction, in particular whether the probate exception to federal jurisdiction obtained. *Litzinger v. Litzinger (In re Litzinger),* 322 B.R. 108 (B.A.P. 8th Cir. 2005). On remand, the bankruptcy court held that it had jurisdiction and entered a new order, again allowing the estate's claim. Louise appealed again from the bankruptcy court's June 21, 2005 order.

## JURISDICTION

In our previous opinion, *Litzinger,* 322 B.R. at 117, we remanded the appeal to the bankruptcy court to determine if the probate exception to federal jurisdiction applies to this proceeding. As we discussed, the Supreme Court has defined the federal courts' jurisdiction in probate matters as follows. A federal court may:

> entertain suits in favor of creditors, legatees and heirs and other claimants against a decadent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in custody of the state court.

*Markham v. Allen*, 326 U.S. 490, 494 (1946).

The Second Circuit articulated a two-part test to determine whether a particular lawsuit implicates "probate matters." *Moser v. Pollin*, 294 F.3d 335, 340 (2nd Cir. 2002). The Ninth Circuit has also adopted this test. *Marshall v. Marshall (In re Marshall)* 392 F.3d 1118, 1133 (9th Cir. 2004) *cert. granted,* 74 U.S.L.W. 3169 (U.S. Sep. 27, 2005) (No. 04-1544). Under the Second Circuit's test, an affirmative answer to any part requires that the case be dismissed for lack of subject matter jurisdiction. *Moser*, 294 F.3d at 340. First, is the bankruptcy court being asked to directly probate

a will or administer an estate? Second, does entertaining the action cause the bankruptcy court to "interfere with the probate proceedings or assume general jurisdiction of the probate or control of property in the custody of the state court." *Id*. (citation omitted). The Second Circuit determined that an impermissible interference may arise in one of three ways: if by adjudicating the complaint, the federal district court (1) "interferes with the probate proceedings;" (2) "assumes general jurisdiction of the probate;" or (3) asserts "control of property in the custody of the state court." *Id* (quoting *Markham*, 326 U.S. at 464; and citing Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3610 (2d ed. 1984)).

On remand the bankruptcy court determined that the probate exception to federal court jurisdiction did not prohibit it from exercising subject matter jurisdiction over this proceeding and neither party challenges the bankruptcy court's determination that it had jurisdiction to determine the disputed claim. We agree that the determination of the claim objection does not fall into the categories of "interference" as defined by the Second Circuit's test and therefore the probate exception does not apply.

## STANDARD OF REVIEW

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Blackwell v. Lurie (In re Popkin & Stern)*, 223 F.3d 764, 765 (8th Cir. 2000); *Wendover Fin. Servs. v. Hervey (In re Hervey)*, 252 B.R. 763, 765 (B.A.P. 8th Cir. 2000). The issue of what constitutes property of the bankruptcy estate is a question of law. *Nelson v. Ramette (In re Nelson)*, 322 F.3d 541, 544 (8th Cir. 2003). A determination of liability for conversion under Missouri law is reviewed de novo. *Bank of Kennett v. Clayton*, 245 S.W.2d 678, 681 (Mo. Ct. App. 1951).

**DISCUSSION**

Rather than address the proof of claim's two allegations of conversion, the bankruptcy court held that Louise was guilty of conversion when Guy transferred $219,392.86 from the Victor/Guy account into the Guy/Louise account. We disagree with the bankruptcy court's holding. Of the two incidents of alleged conversion referenced in the proof of claim by Victor's estate, we hold that Louise committed conversion when she unilaterally withdrew the $40,000.00 from the Guy/Louise Account, but not when Dorothy garnished the account.[2]

The bankruptcy court held that Louise was liable to Victor's estate for conversion of its property. Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights. *Maples v. United Sav. and Loan Assoc.* 686 S.W. 2d 525, 527 (Mo. Ct. App. 1985).

In Missouri, conversion may be proved in one of three ways: firstly, by tortious taking; secondly, by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to rights of the owner; or thirdly, refusal to give up possession to the owner on demand. *Lacks v. R. Rowland & Co., Inc.*, 718 S.W. 2d 513, 517 (Mo. Ct. App. 1986). The bankruptcy court held that Louise "assumed ownership of the funds, with Guy, to the exclusion of Victor's estate."

The actor's good faith, motive, knowledge, care or negligence are not generally "involved" in actions for conversion. *Hinton v. State Farm Mutual Auto. Ins. Co.*, 741 S.W. 2d 696, 700 (Mo. Ct. App. 1987). "Neither mistake nor good faith belief in the right to possession is a defense to a conversion claim." *Commerce Bank, N.A. v. Tifton Aluminum Co., Inc.*, 217 B.R. 803, 816 (Bankr. W.D. Mo. 1997) (citing

---

[2]    While the parties stipulated that Guy <u>and</u> Louise spent money from the account, not only did Victor's estate decline the opportunity to amend its claim, it did not prove that Louise converted any other funds from the account.

*Ensminger v. Burton,* 805 S.W.2d 207, 211 (Mo. Ct. App. 1991)).  Missouri law is consistent with the definition of conversion that appears in the Restatement.

The Restatement defines conversion as follows:

(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may be required to pay the other the full value of the chattel.  (2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important...(b) the actor's intent to assert a right in fact inconsistent with the other's right of control.

Restatement (Second) of Torts § 222A.

The Restatement further indicates that the actor may not generally be relieved from liability for conversion even if the individual acted in good faith.

An actor is not relieved of liability to another for trespass to a chattel or for conversion by his belief, because of a mistake of law or fact not induced by the other, that he (a) has possession of the chattel or is entitled to its immediate possession, or (b) has the consent of the other or of one with power to consent for him, or (c) is otherwise privileged to act.

Restatement (Second) of Torts § 244 (Effect of Mistake).

The United States Supreme Court discussed the common law tort of conversion. It stated that except for exemplary damages, the defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant to determining liability. *Morissette v. U.S.*, 342 U.S. 246, 270 (1952).  The opinion further cites state law cases which indicate that when "[O]ne clearly assumes the rights of ownership over property of another no intent to convert is necessary.  It has been held that one may be held liable for conversion even though he reasonably supposed he had a legal right

to the property in question." *Id.* (quoting *Row v. Home Sav. Bank,* 29 N.E. 2d 552 (Mass. 1940)).

While it is not required that proof be shown that the defendant acted with a wrongful motive or intent, it must be proven that the defendant intended to do the act which deprived the person of his property. *Hinton*, 741 S.W. 2d at 699; *Waverly Timber & Iron Co. v. St. Louis Cooperage Co.,* 20 S.W. 566, 567 (Mo. 1892). "Intent" is defined in the Restatement to indicate that the actor "desires the consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A. Intent is not limited to consequences that are desired. *Id.* cmt. b.

<u>Transfer of funds from Guy/Victor Account to Guy/Louise Account</u>

Louise cannot be held liable for conversion when Guy transferred the funds from the Victor/Guy Account to the Guy/Louise Account. Although Louise contacted the broker to determine the procedure for transferring the funds, Guy was the only one authorized to make the funds transfer. There was no "act" by Louise to transfer those funds because she was not authorized to make that transaction, nor did she. The law of conversion in Missouri requires an act by the offending party. See *Benson v. Jim Maddox Northwest Imports, Inc.,* 728 S.W. 2d 668, 669 (Mo. Ct. App. 1987). The only action Louise took related to this transaction was to call the broker at Edward Jones. Only Guy, acting as the personal representative, had the authority to transfer the funds. Only Guy committed the act which resulted in conversion. If anybody is liable for conversion of these funds, it is Guy and neither Victor's estate nor Warren has made such a claim.

<u>Dorothy's Garnishment</u>

Dorothy obtained a judgment against Guy and Louise for $160,625.00 and garnished the Guy/Louise Account for $90,553.38. Victor's estate claims that Louise is liable for the conversion of the funds that Dorothy garnished. Here too, there is no act by Louise to deprive Victor's estate of its property.

Conversion is an intentional tort. *Benson,* 728 S.W. 2d at 669. According to the Restatement the intent is shown when "the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A. Missouri courts have adopted this definition of intent in its jurisprudence. See *Subscribers at the Auto. Club Inter-Ins. Exch. v. Kennison*, 549 S.W. 2d 587, 590-591 (Mo. Ct. App. 1977). To commit an intentional tort, a person must not only commit the act, but must also intend to produce the resulting harm. *Farm Bureau Town & Country Ins. Co. of Mo. v. Turnbo*, 740 S.W.2d 232, 235 (Mo. Ct. App. 1987). (Citing Restatement (Second) of Torts § 870 cmt.b). In this particular situation, when Dorothy garnished the funds, there was no act by Louise and therefore no manifest intent by Louise to deprive the Estate of Victor Litzinger of its property. Dorothy may well be guilty of conversion, but once again neither Victor's estate nor Warren has asserted such a claim.

<u>$40,000.00 Withdrawal</u>

Louise converted the $40,000.00. Louise argues that she thought Guy had a right to the money because she had been led to believe that Victor's will granted the cash account to Guy and the real property to Warren. She claims that because the money was transferred into the Guy/Louise Account and she believed the money was Guy's, she had rightful access to it. However, under Missouri law it does not matter if she withdrew the money with the good faith belief she had a right to it. The money remained property of Victor's estate and the only intent required to show conversion

-10-

is the intent to perform an act which deprived Victor's estate of the right of ownership of the property. *Hinton*, 741 S.W. 2d at 699.

## CONCLUSION

Guy, but not Louise, converted Victor's money when he took it from the Victor/Guy Account and put it in the Guy/Louise Account. Dorothy, but not Louise, converted Victor's money when she garnished the Guy/Louise Account. Louise converted Victor's money when she withdrew $40,000.00 from the Guy/Louise Account. Accordingly we reverse the bankruptcy court's June 21, 2005 order allowing the claim of the Estate of Victor Litzinger and remand to the bankruptcy court for the entry of an order allowing the estate's claim in the amount of $40,000.00.

———————————