# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 06-6045SI

_____

|  |  |  |
|---|---|---|
| In re: | * | |
| | * | |
| Darwin Gene Rice and | * | |
| Diane Carol Rice, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Darwin G. Rice and | * | |
| Diane C. Rice, | * | |
| | * | |
| Appellants, | * | Appeal from the United States |
| | * | Bankruptcy Court for the Southern |
| v. | * | District of Iowa |
| | * | |
| Carol F. Dunbar, Trustee; | * | |
| Commerce Bank; | * | |
| The Farm Service Agency; and | * | |
| Home State Bank, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 1, 2006
Filed: December 11, 2006

_____

Before KRESSEL, Chief Judge, MAHONEY and VENTERS, Bankruptcy Judges.

_____

KRESSEL, Chief Judge.

The debtors appeal from bankruptcy court[1] orders which denied confirmation of the debtors' Chapter 12 plan, modified the automatic stay and dismissed the case. We affirm.

## BACKGROUND

The debtors are farmers in Jefferson, Iowa. In 2000, they refinanced their loans through the Farm Service Agency. Commerce Bank of Geneva, Minnesota provided a guaranteed loan for $182,000 that it secured with a first lien on 40 acres of the debtors' land and a second lien on 80 acres. The FSA provided $200,000 as an operating loan which it secured with a junior lien on all 120 acres. The debtors have failed to make payments on the Commerce loan since November 2002. As a result, Commerce commenced a foreclosure action against the debtors, which the Iowa District Court granted on January 28, 2005. The debtors appealed this decision to the Iowa Court of Appeals and the Iowa Supreme Court, during which time Commerce could not conduct a foreclosure sale.

In 2004, the United States District Court for the Southern District of Iowa convicted debtor Darwin Rice of making false statements and converting property pledged to a farm credit agency in violation of 18 U.S.C. §§ 658 and 1001(a). Darwin made false statements to the FSA in order to procure the FSA operating loan, and then transferred approximately $28,000 of the loan to a personal account. Citing ineffective assistance of counsel, Darwin appealed this order to the Eighth Circuit Court of Appeals, which affirmed Darwin's conviction.

On October 14, 2005 the debtors filed a voluntary Chapter 12 bankruptcy petition, which again prevented Commerce from conducting its foreclosure sale. The debtors filed their first plan on January 10, 2006 and then filed their first amended

_____

[1] The Honorable Lee M. Jackwig, United States Bankruptcy Judge for the Southern District of Iowa.

plan on April 4, 2006. Creditors objected to both these plans on the grounds that they were not feasible and the bankruptcy court agreed. The court refused to confirm the plan and ordered the debtors to file another amended plan no later than June 6, 2006 and directed that the amended plan contain 1) a detailed liquidation analysis, 2) cash flows for the past two years and for the current year to date, and 3) projections for the rest of the current year and for the next three years. The court set the hearing on the plan for June 14, 2006. On May 25, 2006, the debtors filed a plan. The plan failed to comply with the bankruptcy court's order because it did not include detailed cash flows from previous years. Then, two weeks before the hearing on plan confirmation, the debtors fired their attorney. On June 2, they asked the bankruptcy court to continue the hearing in order to find a new attorney. The court refused their request and the debtors proceeded pro se.

On June 14, 2006, the bankruptcy court held a hearing on confirmation of the debtors' Chapter 12 plan and on Commerce's motions to lift the automatic stay and dismiss the case. After the hearing, the court found that the plan did not pass the best interest of creditors test because the repayment of the unsecured creditors did not include interest. In addition, the court found that the plan was not feasible because the debtors failed to provide documentation of previous cash flows which would prove that the debtors were capable of making the required payments under the plan. The debtors' plan also assumed that the debtors would receive two years of income each year. As a result the court denied confirmation of the plan. Because the court believed that there was little chance of the case going forward, the court also lifted the automatic stay. Lastly, the bankruptcy court dismissed the debtors' case. It is from these orders that the debtors appeal.

### Standard of Review

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Debold v. Case*, 452 F.3d 756, 761 (8th Cir. 2006); *Litzinger v. Litzinger (In re Litzinger)*, 340 B.R. 897, 903 (B.A.P. 8th Cir. 2006).

Clear error means that the reviewing court must be left with the definite and firm conviction that a mistake has been made. *Blan v. Nachogdoches County Hosp. (In re Blan)*, 237 B.R. 737, 739 (B.A.P. 8th Cir. 1999). The decision to grant a continuance of a hearing is within the discretion of the trial court and is only reversible upon showing abuse of discretion. *Lessman v. Comm'r of Internal Revenue*, 327 F.2d 990, 996 (8th Cir. 1964). The decision to dismiss a case for cause rests within the discretion of the bankruptcy court. *See Michels v. Maynard Sav. Bank & Internal Revenue Serv.*, 305 B.R. 868, 871 (B.A.P. 8th Cir. 2004). Finally, the decision to grant a motion for relief of stay is within the discretion of the bankruptcy court and is reviewed for abuse of discretion. *Sanabria v. American National Bank (In re Sanabria)*, 317 B.R. 59, 61 (B.A.P. 8th Cir. 2004). "An abuse of discretion occurs if the court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *PW Enter., Inc. v. Kaler (In re Racing Servs., Inc.)*, 332 B.R. 581, 584 (B.A.P. 8th Cir. 2005).

## DISCUSSION

<u>The Bankruptcy Court Did Not Abuse Its Discretion by Refusing to Grant a Continuance</u>

The withdrawal of an attorney prior to a hearing does not give parties the absolute right to a continuance because, should the contrary rule prevail, parties could postpone litigation indefinitely by discharging their attorneys immediately before trial. *Gruenwald v. Missouri Pacific R.R. Co.*, 331 F.2d 983, 987 (8th Cir. 1964).

The debtors alone were responsible for their lack of counsel at the June 14 hearing. The debtors dismissed their attorney fourteen days before the plan confirmation hearing because they disagreed with their attorney's advice. They then failed to find another attorney before the hearing. The debtors had eight months between the filing of their petition in October of 2005 and the hearing in June of 2006

4

to obtain suitable legal counsel, and their failure to do so does not give them a right to a continuance. The bankruptcy court was within its discretion to deny a continuance of the confirmation hearing.

### The Bankruptcy Court's Decision to Pierce the Corporate Veil Is Immaterial

The parties devote much of their briefs to addressing the bankruptcy court's decision to pierce the corporate veil of D & R Cattle Company. That decision was made as part of a cash collateral hearing and the resulting order. The debtors' contention that the bankruptcy court erred in treating the assets of D & R as the debtor's assets, which is also known as piercing the corporate veil, does not affect the outcome of this appeal. Either the corporate veil was rightfully pierced, and D & R's assets must be treated as the debtors' assets, or the veil was wrongly pierced and the debtors' assets include the value of their stock in D & R. Because the debtors are the sole shareholders of D & R, it makes no difference whether the debtors' assets include the value of the company's assets or the value of its stock. In addition, the debtors did not appeal the order which pierced the corporate veil. Therefore, we decline to address the decision of the bankruptcy court to pierce the corporate veil.

### The Bankruptcy Court Did Not Abuse Its Discretion By Denying Confirmation of the Debtors' Chapter 12 Plan

11 U.S.C. § 1225(a)(4) states that the court shall confirm a plan if, among other requirements, "the value as of the effective date of the plan of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date." This is known as the best interest of creditors test. In addition, 11 U.S.C. § 1225(a)(6) requires that the debtor be able "to make all payments under the plan and to comply with the plan" in order for the court to confirm a Chapter 12 plan. This is known as the feasibility test. If the debtor fails

5

to establish any one of the six elements in § 1225, then the court must deny confirmation of the plan. *See Michels*, 305 B.R. at 871.

Under the best interest of creditors test, the creditors must receive as much under the debtors' Chapter 12 plan as they would receive in a liquidation. Under 11 U.S.C. § 726(a)(5), in a chapter 7 case, if there is money available after the payment of claims, then interest at the legal rate must be paid to the creditors. The bankruptcy court found that the creditors would be fully paid in a liquidation, therefore creditors must be paid in full with interest at the legal rate in the debtors' plan. Congress has not defined precisely what constitutes the "legal rate of interest." One possibility is the state's statutory rate, which is five percent in Iowa. Iowa Code § 535.2(1). Another possibility, which the 9th Circuit has embraced, is the federal judgment rate. *Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1233 (9th Cir. 2002). The federal judgment rate is currently 4.95 percent, and the rate varies with the price of U.S. Government Securities. *See* 28 U.S.C. 1961. However, we need not decide the correct way to determine the legal rate of interest because the debtors' plan does not pay *any* interest to the debtors' unsecured creditors. Thus, the plan does not pass the best interest of the creditors test.

In addition, the plan calls for the FSA to forgive the disaster loans which it provided the debtors. A representative from the FSA indicated that her agency's regulations do not permit the forgiveness of this type of loan, and there are sufficient assets in the debtors' estate to pay this debt in a Chapter 7 liquidation. Thus the debtors must provide for repayment of the loan in their plan. Because the plan does not provide interest at the legal rate to unsecured creditors and it does not pay all the debts in the plan, the plan is not confirmable under 11 U.S.C. § 1225. The bankruptcy court was within its discretion to deny confirmation of the plan.

The debtors also failed to prove that they would be able "to make all payments under the plan and to comply with the plan." Because the debtors failed to comply with

the court order that they provide cash flows from previous years, it is impossible to discern whether the debtors' income statements and cash flow projections are accurate and reasonable. The court would have been within its authority to deny confirmation based solely on the lack of compliance with the court's earlier order. However, the cash flow projections the debtor did provide require the debtors to receive two years of income every year in order to make the required plan payments. This makes the plan not feasible on its face, and gave the bankruptcy court reason to doubt the debtors' ability to "make all the payments under the plan." Because the debtors' plan did not meet all of the requirements of § 1225, the bankruptcy court did not commit clear error in denying confirmation of the plan.

## The Bankruptcy Court Did Not Abuse Its Discretion in Dismissing the Chapter 12 Case

11 U.S.C. § 1208(c)(5) allows the court to dismiss a case for cause, which includes denial of confirmation of a plan and denial of a request made for additional time to file another plan or modification of a plan.

The debtors failed to create a workable plan despite three chances, eight months, and the help of the court. It was not an abuse of discretion for the court to dismiss the debtors' case.

## The Relief from Stay Order is Moot

11 U.S.C. § 362(c)(2)(B) provides that the automatic stay terminates at the time the case is dismissed. Because we are affirming the dismissal of the case, the order granting Commerce relief from stay is moot. Even if the order granting relief from the stay was not moot, there is no clear error in the bankruptcy court's order modifying the automatic stay.

7

## CONCLUSION

For the foregoing reasons, the orders of the bankruptcy court are affirmed.

---